146 N.J. Super. 235 (1976)
369 A.2d 919
DOLORES MARINI & FRANK CROSS, T/A WOODSTOWN CAKE SHOP AND FRANK CROSS & LESTER FORD AND DOLORES MARINI, INDIVIDUALLY, PETITIONERS-RESPONDENTS AND CROSS-APPELLANTS,
v.
BOROUGH OF WOODSTOWN, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1976.
Decided December 16, 1976.
*237 Before Judges BISCHOFF, MORGAN and E. GAULKIN.
Mr. Lawrence W. Point argued the cause for appellant Borough of Woodstown (Messrs. Acton & Point, attorneys).
Mr. G. Thomas Bowen argued the cause for cross-appellants Marini and Cross, t/a Woodstown Cake Shop (Mr. G. Thomas Bowen and Mr. Arthur T. Vanwart, II, attorneys).
Ms. Andrea Kahn, Deputy Attorney General, argued the cause for Department of Community Affairs (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
PER CURIAM.
Defendant Borough of Woodstown (borough) appeals from a final decision of the Director of the Division of Housing and Urban Renewal, Department of Community Affairs, awarding relocation assistance payments to petitioners pursuant to the Relocation Assistance Act (N.J.S.A. 20:4-1 et seq.).
Hilda Montaigne was, in 1973 and for many years prior thereto, the owner of the lands and buildings involved herein which are situate in the borough. For 15 years petitioners, Dolores Marini and Frank Cross, trading as the Woodstown Cake Shop, rented the building from Mrs. Montaigne at a rental of $175 a month. The land beside and behind the building was leased to the borough and served as a parking lot. Because Mrs. Montaigne was advancing in years and *238 in order to insure the continued use of the lands for a municipal parking lot, officials of the borough approached Mrs. Montaigne on or about August 6, 1973, seeking to purchase the land which the borough was then leasing. Mrs. Montaigne agreed to sell, but only if all the lands and building were purchased. Agreement was reached between the parties and on November 26, 1973, a deed conveying the lands and premises to the borough was delivered.
Petitioner Marini testified that though she had been told by Mrs. Montaigne of the sale of the lands to the borough, she had not been informed where to pay the rent and did not pay any. In March 1974 the borough instituted an action to recover the rent due on the building, as a result of which Mrs. Marini paid all rent due and continued to pay the rent through July 1974.
On March 29, 1974 the borough served petitioner with a notice to vacate the premises on August 6, 1974. She opened negotiations with the borough, claiming entitlement to relocation expenses under N.J.S.A. 20:4-1 et seq. (the Relocation Assistance Act) and N.J.S.A. 52:31B-1 et seq. (the Relocation Assistance Law of 1967). During the course of the negotiations Mrs. Marini was notified that she had "until July 20, 1974 to find a suitable location and submit bids for any relocation services or materials which [she] may need under N.J.S.A. 52:31B," and was offered assistance in finding a new location.
Petitioner failed to move by the indicated date but at a later time obtained estimates of the cost of moving the bakery, which estimates ranged from $9,000 to $11,000.
Petitioner Marini and three other people lived in rooms over the bakery and all moved out of the rooms, incurring some expenses in doing so, but Marini remained in the bakery.
The borough thereafter determined that they had no need of the property for public purposes, and since Marini was having difficulty in relocating, the notice to quit was withdrawn on October 29, 1974. The notice stated that the *239 "month to month tenancy at the rental of $175 per month with tenant paying water and sewer excess may continue."
The bakery equipment continues to remain on the premises, but it is not being operated. There is evidence that the building is substandard and could not pass the health inspection for the year 1974.
By letter dated November 12, 1974 petitioner sought and obtained a hearing before the Commissioner of the Department of Community Affairs to determine "the extent of the Borough's responsibility for Mrs. Marini's expenses * * *."
At the termination of the hearing the final decision of the Commissioner ordered that:
(1) Relocation assistance payments were to be paid by the borough to petitioners;
(2) The borough was to have credit against such payments for back rent owed by petitioner for the period during which petitioner's goods remained on the property;
(3) Petitioner should be paid the costs of travel, phone calls and other incidental expenses, and
(4) The borough should pay petitioners Marini and Lester Ford household relocation expenses of $250 each.
The borough appeals from (1), (3) and (4). Petitioners have cross-appealed from (a) the allowance to the borough of a credit for the unpaid rent and (b) the failure of the Commissioner to award attorney's fees.
The Relocation Assistance Law of 1967 (N.J.S.A. 52:31B-1 et seq.) provided for relocation assistance to persons required to vacate real property, or a tenancy therein, pursuant to any lawful order or notice of any state agency or unit of local government on account of the acquisition of any real property for a public use, a program of law enforcement or a program or project for the voluntary rehabilitation of dwelling units. N.J.S.A. 52:31B-3(e). Such relocation assistance, however, is limited to $200 in the case of an individual or family and $3,000 in the case of a business concern. N.J.S.A. 52:31B-4(c).
*240 In 1970 Congress passed the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. § 4621 et seq. In order to be eligible for federal financial assistance for a program that will result in the displacement of any person, state agencies must be able to provide relocation assistance according to the federal scheme. 42 U.S.C.A. § 4630.
The federal act authorizes relocation assistance payments to persons displaced as a result of the acquisition of real property for a federal program far exceeding the limitations in N.J.S.A. 52:31B-4(c). 42 U.S.C.A. § 4622. Moreover, the federal act does not limit relocation assistance to situations where there has been a condemnation of real property in the exercise of the eminent domain power, but authorizes such assistance even when displacement results from the acquisition of real property by voluntary transfer. 42 U.S.C.A. § 4621 et seq.
In order to comply with the federal directive and to be eligible for federal financial assistance to programs causing the displacement of persons as a result of the acquisition of real property, the New Jersey Legislature passed the Relocation Assistance Act, N.J.S.A. 20:4-1 et seq., in 1971. Introduced to the Legislature as Assembly Bill 2320 on April 1, 1971, the bill had appended to it a statement indicating:
The purpose of this bill is to permit New Jersey to comply with the provisions of the new Federal Uniform Relocation Assistance and Real Property Acquisitions Policy Act of 1970 (Public Law 91-646). The Federal Act requires that states be able to offer substantially the same relocation benefits and advisory assistance as that required of the Federal agencies for persons displaced by federally assisted projects. This legislation would permit New Jersey to meet these requirements.
This policy was enacted in the "Declaration of Policy" embodied in N.J.S.A. 20:4-2:
The purpose of this act is to establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by state and local land acquisition programs, by building *241 code enforcement activities, or by a program of voluntary rehabilitation of buildings or other improvements conducted pursuant to governmental supervision.
It is clear that this act was intended to comply with the federal statute and that the State has been receiving funds from the Federal Government on that basis.
The borough argues that N.J.S.A. 20:4-1 et seq. authorizes relocation assistance payments only when persons have been displaced as a result of the condemnation of private property under the doctrine of eminent domain. It relies on N.J.S.A. 20:4-3(a), which defines "taking agency" as follows:
"Taking agency" means the entity, public or private, including the State of New Jersey, which is condemning private property for a public purpose under the power of eminent domain.
The argument continues that since the borough did not condemn the Montaigne property, the statute is not applicable and petitioners are not entitled to relocation assistance payments.
The Department of Community Affairs and petitioner, on the other hand, contend that the New Jersey statute was intended to have as broad an application as the federal act, which includes voluntary as well as involuntary acquisitions.
We refrain from deciding that issue and assume, for purposes of this appeal, that the borough is a "taking agency" under N.J.S.A. 20:4-1 et seq.
The borough contends that petitioners are not "displaced persons" entitled to receive relocation assistance. N.J.S.A. 20:4-3(c) provides:
"Displaced person" means any person who, on or after the effective date of this act, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a taking agency; and solely for the purposes of sections 4 a. and b. and section 7 of this act, as a result *242 of the acquisition of or as the result of the written order of the acquiring agency to vacate other real property, on which such person conducts a business or farm operation, for such program or project. [Emphasis supplied]
The record here discloses that while petitioners, on March 29, 1974, were directed to remove from the premises, that order was withdrawn on October 29. As of that date and as of the date of the hearing, petitioners had not removed their bakery equipment from the premises. They, therefore, do not qualify as "displaced persons" within the intent and meaning of that statute.
Nor are petitioners aided by a reference to N.J.S.A. 52:31B-3(e), which contains a somewhat broader definition of "displaced person" as follows:
The term "displaced" shall mean required to vacate any real property, or any tenancy therein, pursuant to any lawful order or notice of any State agency or unit of local government on account of the acquisition of any real property for a public use, or on account of a program of law enforcement, or on account of a program or project for the voluntary rehabilitation of dwelling units.
The basic element for qualification under that section is a requirement that the tenant vacate pursuant to a lawful order or notice. Here the notice to vacate was withdrawn by the borough before petitioners acted upon it. We reject petitioners' contention that the borough could not withdraw its notice to quit.[1]
The fact that the premises became unsuitable for occupancy as a bakery, because of the violation of health codes, may be relevant should the borough seek to collect the rent due since August of 1974, but it is neither material nor relevant to a determination of petitioners' qualifications for relocation assistance as "displaced persons" under the statute.
*243 The judgment of the Commissioner of the Department of Community Affairs, insofar as it ordered the borough to make relocation payments to petitioners Marini and Cross, together with "costs of travel and phone calls and other incidental expenses," is reversed.
The judgment of the Commissioner, determining that petitioners owed the borough back rent, is vacated. The Commissioner is without jurisdiction to make that determination. The issue of liability for rent may be litigated by and between the parties in the appropriate forum if they desire to do so.
There remains the provision of the judgment directing the borough to make payment for household relocation assistance to Marini and Ford based upon their removal from the apartments above the bakery. We have examined the entire record and find a lack of sufficient credible evidence to support an award to either one for that purpose.
The final decision of the Commissioner of the Department of Community Affairs, insofar as it made an award in favor of both petitioners Marini and Lester Ford for household relocation expenses against the borough is reversed.
No costs to either party on this appeal.
NOTES
[1] In a somewhat analogous situation a governmental agency may abandon a condemnation proceeding, even after the entry of an award by the commissioners. N.J.S.A. 20:3-35.