201 N.J. Super. 428 (1985)
493 A.2d 550
FOREIGN AUTO PREPARATION SERVICE, PETITIONER-RESPONDENT,
v.
NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1985.
Decided May 16, 1985.
*430 Before Judges ANTELL, COLEMAN and SIMPSON.
Sherrie L. Gibble, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Deborah T. Poritz, Deputy Attorney General, of counsel; Sherrie L. Gibble on the brief).
Kenneth D. McPherson, Jr., argued the cause for respondent (Waters, McPherson, McNeill, attorneys; William J. Ward, of counsel; Kenneth D. McPherson, Jr., on the brief).
The opinion of the court was delivered by COLEMAN, J.H., J.A.D.
*431 Respondent, New Jersey Economic Development Authority (NJEDA), appeals from a final decision of the Commissioner of the Department of Community Affairs (Commissioner) awarding $158,767.74 relocation assistance payments to petitioner, Foreign Auto Preparation Services (FAPS), pursuant to the provisions of the Relocation Assistance Act (N.J.S.A. 20:4-1 et seq.). FAPS was a month to month tenant in part of a large commercial tract on Doremus Avenue, Newark, when NJEDA decided to purchase the property for development as an industrial park. As part of the purchase agreement, title was to be delivered free of all tenants. When efforts to have FAPS purchase part of the tract or find a developer for the space desired by FAPS failed, NJEDA insisted that FAPS vacate the premises before closing title. FAPS moved to a nearby building owned by the Port Authority and was awarded relocation expenses. NJEDA now appeals.
On this appeal, NJEDA contends that (1) FAPS is not a displaced person within the meaning of N.J.S.A. 20:4-3(c), and (2) some of the expenses awarded are not related to becoming a displaced business. FAPS contends, among other things, that NJEDA lacks standing to bring this appeal. In addressing this last contention first, we note that NJEDA is not a branch or division of Community Affairs. NJEDA is a public body corporate and politic, "established in, but not of, the Department of Commerce and Economic Development [now Department of Community Affairs]." N.J.S.A. 34:1B-4 a. It is authorized to sue and be sued and to acquire property in its own name. N.J.S.A. 34:1B-5 c and d. We agree that NJEDA should not compromise its own interest in deference to the Commissioner's discretion under the Relocation Assistance Act and should not be foreclosed from exercising its right to judicial review of an allegedly improper decision by the Commissioner. NJEDA has a proprietary interest in the outcome of the case because it has been directed to pay a substantial sum in relocation assistance. *432 See Essex Cty. Welf. Bd. v. Dept. of Inst. & Agencies, 75 N.J. 232, 237 (1978), cert. den. 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978). The fact that the Commissioner has not participated in this appeal through special counsel, N.J.S.A. 52:17A-13, does not impact adversely upon NJEDA's right to appeal. Moreover, in the past public agencies called upon to pay relocation expenses have appealed from adverse rulings. Paterson Redevelopment Agency v. Schulman, 78 N.J. 378 (1979), cert. den. 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); McNally v. Middletown Tp., 182 N.J. Super. 622 (App.Div. 1982); Marini v. Borough of Woodstown, 146 N.J. Super. 235 (App.Div. 1976).
Next we address NJEDA's contention that FAPS was not a displaced person. After carefully studying the appellate record, we affirm the Commissioner's determination that FAPS is a displaced business within the meaning of the Relocation Assistance Act. We are completely satisfied that NJEDA's insistence upon compliance with the contractual provision requiring FAPS to vacate the premises was functionally equivalent to "the written order of the acquiring agency to vacate real property, for a program or project undertaken by a taking agency...." N.J.S.A. 20:4-3 c.
Finally, we consider the items which NJEDA contends are not recoverable. FAPS moved into a warehouse which required extensive renovations and improvements. FAPS is in the business of preparing cars for export and predelivery processing of imported cars. It removes the protective coating, repairs damage sustained in transit and installs accessories. It also reconditions rental cars for car rental companies. NJEDA stipulated $58,561 as reimbursable, if FAPS was a displaced business, consisting of (1) $41,526 for moving cars, equipment, furniture and inventory; (2) $1,110 for installation of telephones, and (3) $15,925 for installation of machinery and equipment. We now affirm the foregoing expenses as recoverable by FAPS as a displaced business based on NJEDA's stipulation, *433 N.J.S.A. 20:4-4 a. and N.J.A.C. 5:11-3.9 (formerly N.J.A.C. 5:11-3.7).
We read the enabling legislation, N.J.S.A. 20:4-1 et seq. and the regulations promulgated thereunder, N.J.A.C. 5:11-1.1 et seq., to establish a basis to compensate displaced persons uniformly and equitably for certain expenses attributable to being displaced. N.J.S.A. 20:4-2. A statute and regulations promulgated thereunder must be read so as to implement the legislative intent to the extent permitted by the statute. State v. Fearick, 69 N.J. 32, 37 (1976). Regulations to implement statutory entitlements cannot exceed the authority of the legislative grant. See New Jersey Guild of Hearing Aid and Dispensers v. Long, 75 N.J. 544, 560-564 (1978).
It is clear from the evidence that before displacement FAPS was in possession of a 34 acre industrial tract which contained a building with 44,000 square feet; the building in turn contained 3,500 square feet of office space. The record contains a letter from attorney Kenneth F. Kunzman, who previously represented FAPS, in which he acknowledges that the fair monthly rental for this rental property in February, 1981 was $20,000 per month even though there was an agreement to pay only $10,000 on a short term basis. Significantly, the building into which FAPS moved was a cold warehouse described as a "structural shell" without heat and only minimum lighting. It consisted of 16 acres which contained a 56,000 square foot building with no office space.
A basic tenet of statutory construction is that unless the statute provides otherwise, it should be interpreted to be most consonant with equity and the commonsense of the situation. See J.C. Chap. Prop. Owner's Prot. Assoc. v. City Council, 55 N.J. 86, 100 (1969); Dvorkin v. Dover Tp., 29 N.J. 303, 314-315 (1959). Both commonsense and the equity of the situation based on the present record require reversal of a substantial portion of the award. The administrative law judge simply referred to the statute or regulations without any attempt *434 to explain a rational basis for the allowance. Equity and commonsense dictate that the Relocation Assistance Act never intended to allow a displaced person to profit from the displacement. By way of illustration, a person displaced from rental property with finished office space and a modern electrical system that rents for $20 per square foot cannot compel the displacing agency to pay for erecting office space, heating and ventilation systems in a warehouse which the displaced person has rented in an unfinished condition for $7 per square foot. The displacement must cause the expense for which reimbursement is sought, not the failure to rent comparable property. The statutory intent is to make the displaced person whole, not richer at the expense of the public. This approach was not followed by the Commissioner.
The pertinent part of the statute, N.J.S.A. 20:4-4, provides:
a. If a taking agency acquires real property for public use, it shall make fair and reasonable relocation payments to displaced persons and businesses as required by this act, for:
(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the taking agency; and
(3) actual reasonable expenses in searching for a replacement business or farm.
The pertinent sections of the regulations, N.J.A.C. 5:11-3.7 (now N.J.A.C. 5:11-3.9) provide:
(a) A relocation payment for moving expenses of a business shall be limited to the following items, as applicable:
1. The actual reasonable and necessary cost of moving the tangible personal property for a maximum distance of 50 miles, unless the distance is enlarged by the displacing agency, for cause.
2. The actual reasonable and necessary cost incurred for inspection and license fees required by statute or local ordinance to permit the operation of the business at the new location.
3. The actual reasonable and necessary cost of reconnecting utility service to machinery and equipment, including, without limitation, the cost incurred in adapting or converting relocated machinery and equipment to use a different *435 type of power supply, to the extent that these services were required in the former location.
4. The actual reasonable and necessary cost incurred for any physical changes in or to an existing building to which a business relocates in order to accommodate the machinery and equipment relocated. The amount incurred shall not exceed the fair market value of the machinery and equipment requiring the physical change. In the event the cost does exceed the fair market value of the machinery and equipment the displacing agency shall then be responsible to pay only the fair market value.
* * * * * * * *
Neither the Relocation Assistance Act nor the regulations promulgated thereunder allow a dislocated person to palm off construction costs, such as erecting new fences, walls, or new offices or installing a modern electrical system, under the guise of relocation expenses in order to reduce the monthly rental. The purpose of the statute is to leave the displaced business in reasonably the same position it was in before the displacement, not better off, in the hope that the business does not move from the area thereby causing the loss of jobs. Here, many of the items considered valid relocation expenses represent "costs associated with the new property and not relocation expenses." Paterson Redevelopment Agency v. Schulman, 78 N.J. at 391. We do not read the statute or regulations as allowing any improvements to the realty except those which are necessary to accommodate relocated machinery and equipment.
We are completely satisfied that the expenses we have disallowed were neither necessary costs of "reconnecting utility service to machinery and equipment" nor necessary costs "incurred for any physical changes in or to an existing building ... in order to accommodate the machinery and equipment relocated." N.J.A.C. 5:11-3.7(3) and (4). On the contrary, these expenses were associated with moving into a warehouse which was substantially different from the Doremus Avenue site and unsuited to FAPS's needs.
Applying the foregoing principles to this case, the following contested items are allowed:

*436
Exhibit A-1
(1) construction of a work bench, $ 1,646.00
(9) piping for car wash, 881.00
(10) high pressure hoses and fitting for pneumatic tools, 195.00
(11) labor and material for installation of car dryer unit, 7,050.00
(24) installation of overhead water lever to hose off cars, 645.00
Exhibit B-1
(1) installation of relocated exhaust fans to remove dust from
 work area, $ 3,900.00
(3) labor to install electrical outlets at work stations, 900.00
 __________
The allowable items total $15,217.00

A remand is required on the following items:

Exhibit A-1
(7) building a car wash equipment room, $ 1,490.00
(21) installation of propane tanks that were not relocatable 9,300.00
 (The cost must be apportioned. The percentage of costs due
to heating the shop is disallowed. The percentage related to
use of the power steam machine is allowed if it existed at the
prior premises. The number of tanks and manner of installation
must be the same as it was at prior site.),
(23) installation of vacuum cleaner lines to a second work
 station. (This is allowable only if there were two
 stations at the Doremus Avenue site.), 975.00
Exhibit B-1
(11) installation of electrical lines, 220 volts, for battery
 charger is allowable only if it existed at previous
 premises, 175.00
(14) must determine if the blowers are different from those
 allowed as Exhibit B-1, item (1) (Only the additional
 blowers relocated are allowable.), 4,500.00
(17) to fix reasonable value of installing four electrical door
 openers brought from prior premises. (The $3,000 estimate
 appears unusually high if the item is for labor only.) 3,000.00
 __________
The items total $19,440.00

*437 The following items are disallowed because they relate to upgrading the leased premises rather than expenses related to being displaced:

Exhibit A-1
(2) battery cage fence, $ 489.00
(3) building office space in the work area, 2,171.00
(4) building parts office, 1,682.00
(5) building, paint and body supply office, 3,868.00
(6) building parts room, 1,120.00
(8) building employee locker room, 480.00
Exhibit B-1
(5) installation of new electrical circuit panel  480 volt, 575.00
(8) electrical wiring of parts department, 700.00
(9) electrical panel for lighting, blowers and exhaust, 300.00
(15) wiring the offices, 2,000.00
Exhibit E-1
the purchase of seven used module office trailers, 43,000.00
Exhibit D-1
fencing an area for storage of automobiles, 20,063.00
Exhibit H-1
plumbing to hook up the trailer-offices, 2,400.00
P-3
installation of new electrical service  480 volt service, 13,564.79
Finally, the engineering expenses are disallowed. It was
required by the Port Authority as part of FAPS's improvement
plans, and not pursuant to N.J.A.C. 5:13-3.13. 2,792.00
 __________
The items disallowed total $95,204.79

To summarize, we affirm the stipulated amount of $58,561. We affirm the award of $15,217. We reverse the award of $95,204.79. We remand on items totaling $19,440 to the Commissioner *438 for redetermination in accordance with this opinion.[1] We do not retain jurisdiction.
NOTES
[1] The $158,767.74 allowed by the administrative law judge in his initial decision was subsequently modified upward to include $13,564.79 for a new electrical service. Also, the administrative law judge discounted all the items listed as Exhibit A-1 by 15%, based on Stipulation IV. The meaning of this stipulation is nowhere explained in the record. That discount was applied only to Exhibit A-1 items which amounted to $9,595.05. We are unable to explain the remaining $6,495.21 discrepancy between our total sum and that of the administrative law judge. If Stipulation IV means that all the estimates or work performed under Exhibits A-1 and B-1 exceed reasonable amounts by 15%, then all of those items allowed by us or which may be allowed on the remand must be reduced by the same 15%.