275 N.J. Super. 507 (1993)
646 A.2d 532
IN THE MATTER OF K.L.F., A MINOR.
Superior Court of New Jersey, Chancery Division Bergen County, Family Part.
May 3, 1993.
*511 Lauren Fleischer Carlton, Deputy Attorney General, for New Jersey Division of Youth and Family Services (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel).
Grace T. Meyer, for the natural mother, B.F.
NAPOLITANO, J.S.C.

I. INTRODUCTION
This case addresses the applicability of the Frivolous Pleading Statute, N.J.S.A. 2A:15-59.1, to an agency of the government of the State of New Jersey, here, the Division of Youth and Family Services of the Department of Human Services, when that agency has been a non-prevailing litigant whose pleadings and positions during the litigation are claimed by the prevailing party to be frivolous. For the reasons set forth below, this court finds that N.J.S.A. 2A:15-59.1 does apply to the State and all agencies and political subdivisions thereof, but does not award fee sanctions in this case.

II. FACTS
This case was originally about the efforts of a natural mother, B.F., to regain custody of her child, K.L.F., and the efforts of the New Jersey Division of Youth and Family Services, DYFS, to place K.L.F. permanently with persons other than B.F. It has become a case about whether the State, i.e., DYFS, should pay B.F.'s legal bill for defending litigation which DYFS commenced and lost.
B.F. became pregnant with K.L.F. as a result of having been raped in New York City. Desirous of escaping New York City and its climate antithetical to the rearing of a child, B.F. came to *512 New Jersey and gave birth to her daughter in November 1988. Due to her relatively uncertain housing situation and means of livelihood, B.F. entered into a temporary custody agreement with DYFS which provided for the temporary placement of K.L.F. into foster care pursuant to N.J.S.A. 30:4C-11.
After living in a Bergen County shelter for the next two months and making periodic visits to K.L.F., B.F. returned to New York City in search of permanent housing. During the next eighteen months, B.F. had neither a home nor livelihood but lived in a series of shelters and with friends until she eventually was able to procure a three-year lease on an apartment in Staten Island, where B.F. currently resides. During this time, B.F. made telephone calls from various New York City pay telephones in repeated attempts to contact a DYFS case worker who had familiarity with her case, but none of the calls met with success.
During this same period of time, DYFS had made several similarly unsuccessful attempts to communicate with B.F. regarding her daughter. In May of 1990, eighteen months after K.L.F. had initially been placed in foster care, DYFS concluded that she needed a permanent home and it moved her to a new set of pre-adoptive parents. One month later, B.F. did contact a DYFS case worker who informed her that the agency was bringing an action for guardianship and that B.F. would not be permitted visitation in the interim. B.F. travelled to Bergen and Passaic Counties in a frustrated attempt to file a pro se motion for visitation, and then returned to Staten Island without having obtained any other assistance in her matter and without ever seeing K.L.F.
On March 23, 1991, DYFS petitioned for guardianship and termination of parental rights based on abandonment and the best interests of the child under N.J.S.A. 30:4C-15. At that time, K.L.F. had been living for ten months with her second set of pre-adoptive parents, which fact prompted, at trial, the issue of whether K.L.F.'s separation from her pre-adoptive parents would be adverse to her best interests. After a trial, this court declined to terminate B.F.'s parental rights, concluding that the mother *513 had not abandoned the child and was indeed fit to raise the child, and, further, that the child would not suffer psychological harm by being removed from her pre-adoptive parents and returned to her mother. The Appellate Division, in an unreported decision, and the Supreme Court, at 129 N.J. 32, 608 A.2d 1327 (1992), each unanimously affirmed the ruling of this trial court. B.F. now seeks fee sanctions under the Frivolous Pleading Statute, N.J.S.A. 2A:15-59.1, for the original trial court proceeding.

III. STATUTORY ANALYSIS

A. The Frivolous Pleading Statute Itself.
This court is in the novel position of having to assess the operation of New Jersey's Frivolous Pleading Statute, N.J.S.A. 2A:15-59.1, in a context whereby application for fee sanctions has been made against a non-prevailing party that is also a constituent agency of the State of New Jersey.
The language of the statute, in relevant part, reads as follows:
A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non-prevailing person was frivolous. [N.J.S.A. 2A:15-59.1(a).]
Of course, in assessing the applicability of the foregoing provision vis-a-vis the State as a party to a civil action, the critical instruction given by the Legislature is that a party may seek sanctions against "any other [non-prevailing] party." These words are intended to delineate that category of persons against whom fees may be assessed, provided the other requirements of the statute are satisfied. However, this phrase, in unfortunately indeterminate fashion, leaves unattended the question of whether "any party" includes the State of New Jersey and any of its constituent agencies and political subdivisions, or is merely restricted to non-prevailing[1] private parties. Therefore, the analysis *514 herein must necessarily begin with a judicial construction of the precise language of N.J.S.A. 2A:15-59.1 so that a determination may be made as to whether an award of relief in the form of fee sanctions imposed upon the State was indeed within the contemplation of the Legislature. Of course, should this threshold question be resolved in the negative, then this court need not reach the issue of whether the State's conduct or pursuit of this litigation at the trial level may indeed be characterized as "frivolous" within the letter and intent of N.J.S.A. 2A:15-59.1.

B. Construction of the Statute.
The foremost uncertainty which exists, and for whose explanation the Frivolous Pleading Statute must now be construed, is whether the Legislature, in its inclusion of "any party" without according explicit exception to the state, affirmatively intended to impel the state, under the threat of potential fee sanctions, towards the same standards of "good faith" and "reasonable basis in law"[2] that inure to private parties whenever they prosecute, defend, or otherwise appear in a civil or quasi-civil action. To resolve this query we must look to the principles of statutory interpretation.
Under the general rules of statutory construction, it is clear that the court must first direct its inquiry to the actual language of the statute. Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 609 A.2d 781 (App.Div. 1992). Where the Legislature has clearly spoken, the court may not ignore the Legislature's intent and must give full force and effect to it. In the absence of a clear intent, however, the court may derive the legislative intent from a variety of sources, including the language of the statute, the policy behind the statute, concepts of reasonableness, and legislative history. Coletti v. Un. Co., C. Freeholders, 217 N.J. Super. *515 31, 524 A.2d 1270 (App.Div. 1987); Milazzo v. Exxon Corp., 243 N.J. Super. 573, 580 A.2d 1107 (Law Div. 1990).
Of course, where the drafters of a statute did not contemplate a specific situation, the function of the court is to construe the statute in a manner consonant with the likely intent of the Legislature had the situation been anticipated. County of Essex v. Waldman, 244 N.J. Super. 647, 583 A.2d 384 (App.Div. 1990), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991); Intern. Flavors & Fragrances, Inc. v. Taxation Div. Dir., 7 N.J. Tax 652 (App.Div. 1984), aff'd, 102 N.J. 210, 507 A.2d 700 (1986).
Furthermore, wherever the statute is silent or ambiguous, the court retains the clear duty and has the constitutional mandate to choose that construction which will carry out the legislative intent of the statute as a whole. Accountemps v. Birch Tree Group, 115 N.J. 614, 560 A.2d 663 (1989). But in any event, the interpretation accorded to a statute must be given in a common sense manner which advances the legislative purpose. Midlantic Nat. v. Peerless Ins., 253 N.J. Super. 137, 601 A.2d 243 (App.Div. 1992); Foreign Auto Prep. S. v. N.J. Economic D. Auth., 201 N.J. Super. 428, 493 A.2d 550 (App.Div. 1985).
The court's threshold concern here is the meaning which attaches to the phrase "any party"; that is, whether the qualifying word "any" has been interjected merely so as to reflect the inclusion of all parties irrespective of their posture in the litigation (i.e., plaintiff, defendant, third-party defendant, etc.) or whether the use of the word "any" was further intended to create a broader, more all-inclusive category which necessarily eradicates the distinction between private parties and the State, as far as their respective conduct during the course of litigation is concerned. Clearly, the express language of N.J.S.A. 2A:15-59.1, as cited earlier, is not dispositive as to this issue. Thus, our analysis must now turn to the policy underlying the statute.

*516 C. The Policy Underlying the Statute.

Since its adoption in 1988, the Frivolous Pleading Statute has been acknowledged as a descendant of the 1983 amendment to Federal Rule of Civil Procedure 11 and as propounding the same purposes as that rule  namely, the deterrence of groundless suits, claims, and defenses. Iannone v. McHale, 245 N.J. Super. 17, 27-29, 583 A.2d 770 (App.Div. 1990).[3] It seeks to accomplish this objective by providing that a "party `who prevails in a civil action' may be awarded `all reasonable litigation costs and reasonable attorney fees' if the judge finds `at any time during the proceedings or upon judgment' that a complaint, counterclaim, cross-claim or defense of the non-prevailing person was frivolous." Ibelli v. Maloof, supra, 257 N.J. Super. at 332, 608 A.2d 440 (citing relevant portions of N.J.S.A. 2A:15-59.1).
In Somerset Trust Co. v. Sternberg, 238 N.J. Super. 279, 569 A.2d 849 (Ch.Div. 1989), the court noted that the statute was "punitive in nature." Id. at 286, 569 A.2d 849.[4] The Statement accompanying the statute's legislative introduction elaborates upon this theme, describing the purpose of the statute as one which would "[p]ermit[] the recovery of attorney's fees in a civil suit where the legal position of [a] non-prevailing party was not justified. Furthermore, ... its purpose is to discourage the advancement of frivolous legal positions and to deter and ultimately eliminate the filing of non-meritorious claims and defenses." Chernin v. Mardan Corp., 244 N.J. Super. 379, 382, 582 A.2d 847 (Ch.Div. 1990) (citing Somerset Trust Co. v. Sternberg, supra and Evans v. Prudential, 233 N.J. Super., 652, 657-59, 559 A.2d 888 *517 (Law Div. 1989). See also Iannone v. McHale, supra; Fagas v. Scott, 251 N.J. Super. 169, 597 A.2d 571 (Law Div. 1991).
The clear objective of the statute, then, as revealed by its legislative history and appurtenant decisional law, is punitive in nature and seeks the elimination of baseless litigation and pleadings, without express exceptions. Despite this clear mandate, however, one must engage in further analysis to determine whether the Legislature intended that its operation have the effect of rendering the State as vulnerable as a private party to an application for fees made under N.J.S.A. 2A:15-59.1. For this determination more artful means of statutory construction must be employed.

D. Express Mention and Implied Exclusion.
The great body of analytical philosophy has long instructed that a conception may be defined through the successive removal of all that which is extraneous. This process of remotion was most adeptly enunciated by St. Thomas Aquinas in the Summa Contra Gentiles as the principal means by which the human intellect may apprehend the divine essence. Of course, for this discussion we must use those methods of analysis which are more significantly grounded in jurisprudence and the principles of judicial construction. Nonetheless, the process of remotion is not so alien to our purposes that it is bereft of contemporary application.
The Latin maxim "expressio unius est exclusio alterius" is fairly the constructionist's interpretive counterpart to the philosopher's deductive process of remotion. Literally translated, the adage means the express mention of one thing necessarily implies the exclusion of all others.[5]Allstate Ins. Co. v. Malec, 104 N.J. 1, *518 514 A.2d 832 (1986). See also State v. Jersey Carting, Inc., 259 N.J. Super. 130, 611 A.2d 677 (Law Div. 1992); Squires v. Atlantic Cty. Freeholder Bd., 200 N.J. Super. 496, 491 A.2d 823 (Law Div. 1985). The application of this rule to the construction of N.J.S.A. 2A:15-59.1 leads one to the inescapable inference that the Legislature's failure to exclude expressly the state is a reflection of the legislative design that the state ought not be excepted from the punitive effects of the statute. Such a reading of the statute becomes more compelling when one considers those instances where the Legislature has affirmatively sought to limit or prohibit the imposition of punitive attorney fee sanctions against the state. Where such is the case, the Legislature has done so by, expressly and with particularity, identifying the parameters of such limitation.
For example, under New Jersey's Environmental Rights Act[6], the state and private parties alike may be sanctioned for violation of any statute designed to prevent or minimize pollution of the environment. Incorporated into that act, however, is a provision for attorney fee sanctions, N.J.S.A. 2A:35A-10, which, in relevant part, reads as follows:
a) In any action under this act the court may ... award to the prevailing party reasonable counsel . . fees, but not to exceed a total of $50,000 in an action brought against a local agency or the Department of Environmental Protection. (Id. Amended by L. 1990, c. 28, § 17, eff. July 1, 1991) (Emphasis added).
*519 Under this statute, as the language clearly indicates, the Legislature has specifically limited the State's exposure to punitive attorney fee sanctions. Therefore, in light of "expressio unius, etc.", where there is an absence of an affirmative and explicit limitation the court must presume that the Legislature did not in any manner intend to limit the State's exposure to potential fee sanctions.[7] Were this court not to rule in such a fashion with respect to the present application under N.J.S.A. 2A:15-59.1, the result would be the sua sponte creation of an exception which would certainly not advance the legislative purpose.[8] The Legislature's failure to carve out an exception within N.J.S.A. 2A:15-59.1 militates against any finding that the drafters of the statute intended to immunize the State from this potential sanction.[9]
*520 Of course, the law cautions that the maxim "expressio unius, etc." is merely an aid in construction and may not be blindly or mechanically invoked. Allstate Ins. Co. v. Malec, supra. However, the principle may be applied in conjunction with the legislative intent to arrive at a complete and accurate construction of the statute. Here, when combining the prior policy discussion with this technical construction of the statute, it becomes patently evident that the Legislature did not intend to exempt the State, as party to a civil action, from the same standards of "good faith" and "reasonable basis in law" as would be expected of a private party in the same action. A proper construction of N.J.S.A. 2A:15-59.1, then, must comport with such legislative design. For these reasons, the court finds that the State of New Jersey, and its constituent agencies and political subdivisions, may indeed be directed to pay fees as "any [non-prevailing] party" under the Frivolous Pleading Statute.

E. The Contradistinction of N.J.S.A. 2A:15-60.
N.J.S.A. 2A:15-60, a statute seemingly incompatible with N.J.S.A. 2A:15-59.1, generally provides that a defendant in a civil action brought by the State as plaintiff is for the most part precluded from recovering costs against the State.[10] Because the language of that statute is seemingly inconsistent with the clear policy enunciated under N.J.S.A. 2A:15-59.1, further analysis is *521 needed to determine whether the operation of the former necessarily impinges upon the scope and effect of the latter.
First, it is a well-established rule that where two statutes appear to be in conflict, and one is general in nature and the other more specific, the conflict is resolved in favor of the more specific statute "as a more precise manifestation of legislative intent." State v. Gerald, 113 N.J. 40, 83, 549 A.2d 792 (1988) (citing In re: Salaries Probation Officers Hudson Cty., 158 N.J. Super. 363, 366, 386 A.2d 403 (App.Div. 1978)); Last Chance Development v. Kean, 232 N.J. Super. 115, 556 A.2d 796 (App.Div. 1989). Although there exists a strong presumption against the more recent conflicting statute acting as an implied repealer of the prior act, such an operation is permitted where the later expression of legislative will is so clearly in conflict with the earlier statute that the two cannot reasonably stand together. City of Camden v. Byrne, 82 N.J. 133, 411 A.2d 462 (1980); Yacenda Food v. N.J. Highway Authority, 203 N.J. Super. 264, 496 A.2d 733 (App.Div. 1985). In Byrne, for example, the court declared that the decision to rule in such a manner as to effectuate an implied repealer or modifier of a prior statute ". . depend[s] in large part [up]on any relevant expressions of legislative intent as well as the peculiar fact situations presented." Byrne, supra, 82 N.J. at 154, 411 A.2d 462. The court in Yacenda Food, however, elected to characterize the test as limited to those instances where "the laws are inconsistent or repugnant." Yacenda Food, supra, 203 N.J. Super. at 274, 496 A.2d 733.
N.J.S.A. 2A:15-60 is a general provision which has remained essentially unchanged since its original enactment ninety years ago as L. 1903, c. 247. The operation of the statute, however, has not been absolute; in the years since its enactment the statute has been circumvented when the basis for assessing counsel fees against the State has been identified narrowly and with particularity. See State, by Highway Com'r v. Dilley 48 N.J. 383, 226 A.2d 1 (1967). Furthermore, the relative age of the statute brings into serious question its relevance nearly a century after its enactment. *522 It is a broad statute which generally prohibits the assessment of costs against the state in its capacity as plaintiff in a civil suit, and is widely regarded as the anti-frivolous appeals statute.
N.J.S.A. 2A:15-59.1, however, prescribes the assessment of attorney fees under precisely those circumstances which apparently are proscribed by N.J.S.A. 2A:15-60. The court, therefore, is faced with the prospect of comparing two seemingly incompatible statutes. On comparison of the relative ages of the statutes, and the strength and force of the legislative mandate enunciated in N.J.S.A. 2A:15-59.1, as adduced by the foregoing discussion of legislative intent, this court finds that N.J.S.A. 2A:15-59.1 supersedes N.J.S.A. 2A:15-60 and operates as an implied modifier of the latter and is, therefore, controlling.

F. Constitutional Implications.
On a preliminary note, it must be observed that any statute which seeks to impose sanctions in the form of fees is subject to attack on the grounds that it may potentially and impermissibly intrude upon the Supreme Court's constitutional right to regulate the practice of law, in violation of the principles set forth in Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950). See Somerset Trust Co. v. Sternberg, supra and Evans v. Prudential Property & Cas. Ins. Co., supra. This court is nevertheless satisfied that the fee provisions of N.J.S.A. 2A:15-59.1 are constitutionally permissible for two reasons. First, the Supreme Court permits fees to be awarded when authorized by law, R. 4:42-9(a)(8). Moreover, the proposition that the statute improperly infringes on the Supreme Court's exclusive power to define and regulate practice and procedure in all courts has been rejected persuasively and articulately in Fagas v. Scott, supra, a frequently cited opinion written by Judge Villanueva when he was in the Law Division.[11]
*523 Of greater import to the discussion herein is the determination of whether the assessment of fees against the state in this case would prove violative of the Appropriations Clause of the New Jersey Constitution. Of course, this threshold determination must be answered in the negative before the substantive merits of B.F.'s fee application under N.J.S.A. 2A:15-59.1 may be considered.
Although there exists a dearth of precedent germane to the punitive sanctioning of the State under the Frivolous Pleading Statute, there are a number of cases in which a court under a variety of circumstances has considered directing the State to compensate the prevailing party with costs. Among such cases, it is generally recognized that, where no appropriation had been made by our Legislature for the payment of compensation to counsel in a particular scenario, the trial judge was without power to order such compensation by the State. See Crist v. N.J. Div. Youth & Family Services, 135 N.J. Super. 573, 576, 343 A.2d 815 (App.Div. 1975). As Chief Justice Weintraub declared in Fitzgerald v. Palmer, 47 N.J. 106, 219 A.2d 512 (1966), "... No money may be drawn from the State treasury but for appropriations made by law. Const. Art. VIII § II Para. 2. The judiciary could not order the Legislature to appropriate money, or the governor to approve an appropriation if one were not made..." [at 108, 219 A.2d 512]. See also Youth & Family Services v. D.C., 219 N.J. Super. 644, 530 A.2d 1309 (App.Div. 1987).
Unlike certain of its sister statutes,[12]N.J.S.A. 30:4C-1  30:4C-83 (the authority under which DYFS brought this original action to terminate parental rights), neither provides for the assignment of counsel for indigent parents in such proceedings nor for the payment of compensation to their attorneys. However, this court is satisfied that the application presently being made is not for mere compensation but rather for sanctions against the State for its allegedly baseless prosecution of its application. Therefore, *524 the prohibitions contained in the statutory and case law cited above do not directly govern the circumstances at bar. Indeed, for this court to award punitive fee sanctions against the State under the Frivolous Pleading Statute in this case is not akin to making the type of ad hoc legislative determinations as were proscribed in the Fitzgerald and Crist cases. This court seeks not to declare arbitrarily which services ought to be provided by a particular state agency, for such a ruling would be in utter derogation of the Legislature's appropriations power. Rather, this court seeks to give full effect to the punitive design of N.J.S.A. 2A:15-59.1. Thus, the resolution of the fee sanction issue depends not on whether the Legislature has specifically allocated funds for the compensation of attorneys in cases such as this one; rather, the satisfaction of a punitive fee sanction herein must necessarily come from the general appropriations provisions of the relevant statute (N.J.S.A. 30:2-1  30:2-2).
This court, having been satisfied that the construction of N.J.S.A. 2A:15-59.1 (with due deference to N.J.S.A. 2A:15-60) indicates the State's inclusion under the statute, and, having been further satisfied that the assessment of fee sanctions against the State under the Frivolous Pleading Statute would not violate any constitutional or other statutory provisions, now evaluates the substantive merits of B.F.'s application for fees.

IV. THE SUBSTANTIVE MERITS OF B.F.'s FEE APPLICATION
According to the statute, an application may only be entertained by the court which heard the matter for which fees are sought. Thus, this court's analysis is limited to the original termination action brought by DYFS; the reasonableness of DYFS's appeals to the Appellate Division and to the Supreme Court cannot be part of this application.
The disjunctive, two-prong statute requires the trial judge to find the action of the non-prevailing party frivolous either if it was based on malevolent intent (N.J.S.A. 2A:15-59.1.b.(1)) or if the *525 party knew or should have known that the action had no reasonable basis in law, equity, or fact (N.J.S.A. 2A:15-59.1.b.(2)). Iannone v. McHale, supra, 245 N.J. Super. at 29, 583 A.2d 770. See also Fagas v. Scott, supra, 251 N.J. Super. at 190, 597 A.2d 571 ("Courts which have interpreted the act clearly indicate either `prong' of the statute may serve as the basis for the imposition of sanctions ..." Id.)
The first prong of the statute, bad faith, is met by showing that the legal action was used to harass, cause delay, or maliciously inflict injury, although a showing of actual malice is not always a prerequisite. See Fagas v. Scott, supra, 251 N.J. Super. at 190, 597 A.2d 571.
The second prong provides that a party advancing an untenable position shall be subject to an imposition of fees. The Appellate Division has found that whether the nonprevailing party recognized or should have recognized the unsupportable nature of its claim is measured against a standard of objective reasonableness. Iannone v. McHale, supra, 245 N.J. Super. at 29, 583 A.2d 770. Another useful measure is whether it can be demonstrated that the claim or defense bore no rational argument or credible evidence in its support, or where a reasonable person could not have expected its success or where it was otherwise untenable. See 20 C.J.S. Costs § 128, at 109 (1990). See also Fagas v. Scott, supra, 251 N.J. Super. at 189, 597 A.2d 571.
On a preliminary note, B.F., in applying for fee sanctions against the State, relies heavily upon the unanimous rulings of both the Appellate Division and Supreme Court (in affirming the decision of this trial court) as tending to establish the meritless nature of DYFS's complaint seeking to terminate parental rights. Although such a result suggests the accuracy of the lower court decision, the disposition of a matter on successive appeals does not necessarily reflect the relative "frivolity" of that matter when brought at the trial level. Thus, the manner in which the appeals in this matter have been addressed will be omitted from this *526 Court's consideration of B.F.'s present fee application under N.J.S.A. 2A:15-59.1.
The original cause of action at trial revolved around DYFS's solicitation of an order terminating B.F.'s parental rights under N.J.S.A. 30:4C-15. DYFS brought the action on the basis that B.F., the natural mother, had allegedly abandoned her daughter, that B.F. was an unfit parent, and that the removal of K.L.F. from the custody of her second set of foster parents would otherwise pose too great a risk to the child's future psychological development. This court refused to terminate the mother's parental rights, concluding that the mother had not abandoned the child and was indeed fit to raise the child, and, further, that the child would not suffer psychological harm in being removed from her foster parents and returned to her mother. Having decided these issues in a manner unfavorable to DYFS, this court must now assess their validity and whether they may properly be characterized as "frivolous" within the contemplation of N.J.S.A. 2A:15-59.1.
With respect to the issue of abandonment, the applicant herein contends that DYFS was unreasonable in concluding, from the facts adduced at trial, that B.F. had abandoned her daughter. B.F. also contends that DYFS had acted with malice or intent to harass her by failing to abide by the statutory prerequisites when it unilaterally terminated B.F.'s right to contact with her daughter.
At the conclusion of the trial, this court ruled that DYFS' belief that an abandonment had taken place was erroneous. This court found that B.F. had placed K.L.F. into temporary voluntary foster care with the understanding that she would be able to resume custody at any time in the future. This court found that, subsequent to placing her daughter with DYFS, B.F. began to prepare for life with her children, despite lacking any income or home, or other means of receiving or responding to the telephone calls and letters DYFS had sent her. This court found that B.F. had made "numerous and persistent", albeit "ineffectual, paltry and meager" *527 attempts to communicate with DYFS in order to see the child, and that those efforts included phone calls to DYFS on numerous occasions. Specifically, this court found that "no efforts to communicate with the Division or to see the child were separated by more than a year." In so ruling, this court emphasized that B.F. had worked persistently to regain the custody of her child, including her frustrated efforts to file a pro se motion for visitation.
However, the mere overwhelming weight of these revealing facts is not alone sufficient to sustain a claim of frivolity. In fact, through the presentation of its case, DYFS was able to demonstrate what this court perceived to be the agency's genuine interest in the psychological welfare of K.L.F. and its fear of the potentially adverse consequences of removing her from her second set of foster parents. DYFS attributed its concern to the consecutive 18-month and 10-month periods that K.L.F. spent with disparate sets of foster parents and the consequent bonding which was presumed to have occurred during these periods, and to the physical and emotional instability which accompanied the sporadic uprooting of this child. These factors were evaluated by the agency apparently without its knowing of B.F.'s perseverance in attempting to resume custody of her daughter.
In light of these factual findings, the court concluded that the "evidence of abandonment [was] meager and [was] substantially outweighed by the commendable efforts on the part of [B.F.]" The court now finds that DYFS was oblivious to B.F.'s persistence and resolve to resume custody and was, further, motivated by what this court perceives to be the agency's genuine concern for the welfare of the child. For these reasons the substantive merits of the claims of abandonment cannot be said to be frivolous.
B.F. makes an ancillary insinuation that the State ought to be sanctioned for disregarding certain procedural requirements under N.J.S.A. 30:4C-12 by unilaterally terminating B.F.'s parental rights without the prerequisite court order. However, this court is satisfied that the agency's mere failure to abide by a statutory rule of procedure is not, in and of itself, prima facie *528 evidence of bad faith or malice; rather, the court must look beyond the procedural deficiency and to the motivation of the agency in its acts or omissions.
Although DYFS ought to be reproached for abrogating the procedural requirements of N.J.S.A. 30:4C-12, this type of reprimand is not properly now before this court, nor does it necessarily follow that grounds for such reprobation are also the proper bases for the imposition of fee sanctions under N.J.S.A. 2A:15-59.1. Thus, consistent with the foregoing discussion, this court is convinced that the State, through DYFS, did indeed act with genuine concern for what it perceived to be the best interest of the child. For these reasons, this Court finds that that portion of B.F.'s application which pertains to DYFS's claims of abandonment is rejected.
Regarding the issue of the child's future welfare, B.F. herein contends that the claims interposed by DYFS at trial, namely, that removal of K.L.F. from her foster parents would give rise to adverse cumulative effects, were speculative, unfounded in fact or theory, and otherwise untenable. At trial, the respective parties sought to establish, through the proffering of expert testimony, alternatively the absence or existence of harm that would inure to K.L.F. in the event she would be reunited with her mother.
Jerome Goodman, M.D., a psychiatrist, testified for B.F. that the detrimental effect of removing K.L.F. from her foster parents and placing her with her mother would be minimal. This court was particularly persuaded by Dr. Goodman's analysis that K.L.F.'s successful experience of being transferred from one set of foster parents to another indicated that she would similarly adjust to being returned to her natural mother.
Martha Page, D.S.W., a social worker, testified on behalf of DYFS and acknowledged that K.L.F. had apparently adapted successfully to the change in caretakers at eighteen months, but expressed concern over the cumulative effects of another change in K.L.F.'s life.
*529 This court refused to accept the testimony of Dr. Page, finding it distorted by personal judgments and biases. This court also faulted Dr. Page for minimizing the significance of the difference between the child's racial background and that of the pre-adoptive parents, and for giving too little deference to the fact that K.L.F. had adjusted successfully when she was moved from the foster home to the pre-adoptive home.
Based partly on her demeanor and her unwillingness to concede anything positive about B.F., this court concluded that Dr. Page's testimony was neither impartial nor credible. The testimonial evidence overwhelmingly supported a ruling favorable to B.F. This fact, however, although a reflection of the eventual merits of the parties' respective positions, is not dispositive in assessing the degree of frivolity as contemplated by N.J.S.A. 2A:15-59.1. The issue of prospective harm to the child was resolved through the balancing of competent, albeit incommensurate evidence and rational, albeit  for DYFS  ultimately unsuccessful argument. Given this assessment of the respective legal bases of the arguments advanced in this case, it may fairly be concluded that DYFS's intellectual demeanor and general conduct of this litigation, at least at the trial level, would certainly survive the type of scrutiny endorsed by cases such as Fagas. This conclusion is made more compelling when considering that which this court has perceived throughout to be the belief which has motivated DYFS on the prosecution of this matter: the genuine concern for K.L.F.'s emotional and physical welfare. For these reasons, this court is satisfied that that portion of B.F.'s application which pertains to the State's claims of future prospective harm to K.L.F. should similarly be and thus is rejected.

V. CONCLUSION
The court herein has considered the scope and effect of the fee sanction provisions of the Frivolous Pleading Statute, N.J.S.A. 2A:15-59.1, in the specific context whereby an application under the statute has been made against a constituent agency of the *530 State of New Jersey, here, the Division of Youth and Family Services of the Department of Human Services. For the reasons articulated above, this court finds that the State and its agencies and political subdivisions do indeed fall within the purview and operation of the statute, but the court remains disinclined to award fee sanctions in this particular case.
NOTES
[1] "Non-prevailing" refers to a party's success with respect to the matter for which fees are sought and not necessarily to the ultimate outcome of the litigation. See Ibelli v. Maloof, 257 N.J. Super. 324, 337, 608 A.2d 440 (Ch.Div. 1992).
[2] See N.J.S.A. 2A:15-59.1(b).
[3] This is not to imply that the former is nondistinct from the latter. New Jersey's counterpart to the original Fed.R.Civ.P. 11 is R. 1:4-8. N.J.S.A. 2A:15-59.1, however, stands alone and does not expressly refer to R. 1:4-8. It also is cast in terms of sanctions against a party, while Fed.R.Civ.P. 11 focuses upon the acts of the attorney.
[4] See also Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 1945-46, 36 L.Ed.2d 702, 707 (1973) wherein the United States Supreme Court said that "... the underlying rationale of `fee shifting' is, of course, punitive ..."
[5] Lest the classical tone of this maxim be perceived as diminishing its utility, it should be noted that four justices of the United States Supreme Court endorsed its logic as recently as 1992 in a case in which they held that courts, when construing statutes, should assume that the drafter of the statute intended by the use of the conjunctive "and" that no more than that which follows the "and" should be implied. Thus, when confronted with interpreting the phrase "solicitation and receipt of funds" in a regulation restricting behavior at an airport, a plurality of the Court held that the phrase did not prohibit solicitation only, and did not prohibit solicitation in conjunction with any other contemporaneous activity, but only prohibited solicitation and receipt of money by the person who solicited and as a result of that solicitation. International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. ___, 112 S.Ct. 2701, 120 L.E.2d 541 (1992), Kennedy, J., concurring.
[6] N.J.S.A. 2A:35A-1  2A:35A-14. Under the Act, any person may commence a civil action against any other person alleged to be in violation of a provision of the Act, N.J.S.A. 2A:35A-4. "Person" includes individuals or the state, N.J.S.A. 2A:35A-3.
[7] Another example is N.J.S.A. 2A:15-60 where again the Legislature expressly carved out an exception for the State. The seeming incompatibility of this statute with N.J.S.A. 2A:15-59.1 is discussed below.
[8] It is unfounded to presume that the State, by its status as a sovereign or for any other reason, possesses less of a propensity to promote frivolous litigation and is, therefore, by its nature entitled to exclusion under the statute.
[9] It has not seriously been suggested that the use of the word "civil" in N.J.S.A. 2A:15-59.1 means only cases in the Law Division. This myopic reading of the word "civil" cannot have been intended lest violence be done to the broad purposes of the statute. There is nothing in the statute to suggest that the Legislature intended to limit its attack on frivolous litigation to so narrow a class of cases. Rather, "civil" must refer to all non-criminal matters in the Law Division and all matters in the Chancery Division. Cf., Ibelli v. Maloof, supra; Somerset Trust Co. v. Sternberg, supra.

Indeed, R. 4:3-1, Divisions of Court, designates for the "Family Part" "All civil actions in which the principal claim is unique to and arises out of a family or family-type relationship ..." (emphasis added). Furthermore, although the award of attorney fees in what are traditionally civil "family" actions is governed by R. 4:42-9(a)(1), Judge Keefe, when he was in the Law Division and temporarily assigned to the old Juvenile and Domestic Relations Court, in Youth & Fam. Serv. Div. v. J.O., 178 N.J. Super. 74, 427 A.2d 1150 (Cty.Ct. 1980), held that an application for termination of parental rights was not a "matrimonial action" as described by the then-existing rule of definition, R. 4:75 (deleted and replaced in 1983 by R. 5:1-1 et seq). Under this rubric, Judge Keefe declared that the prevailing litigants (i.e., the natural parents) were not entitled to attorney fees under R. 4:42-9(a)(1).
More recent cases reaffirm that R. 4:42-9(a)(1) may not be used as a mechanism for imposing sanctions on a litigant who brings a meritless motion in civil family actions generally. Darmanin v. Darmanin, 224 N.J. Super. 427, 430, 540 A.2d 913 (App.Div. 1988). Therefore, since authority for the imposition of fee sanctions in civil family actions does not lie with R. 4:42-9(a)(1), it inescapably follows that prevailing parties must necessarily look to N.J.S.A. 2A:15-59.1 for such relief.
[10] N.J.S.A. 2A:15-60, in relevant part, provides as follows:

In an action brought by the state ... the plaintiff shall recover costs as any other plaintiff; but the defendant in such an action shall not recover any costs against such plaintiff, whether the action is dismissed, judgment shall pass in favor of the defendant or any other proceeding is taken.
[11] That court also concluded that the statute was not void for vagueness nor did it deny due process under the United States or New Jersey Constitutions.
[12] N.J.S.A. 9:6-8.23(a), N.J.S.A. 9:6-8.43(a).