693 A.2d 941

DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF,
v. P.M. AND G.M.,[1] DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Monmouth County
Family Part

February 25, 1997.[2]

---

[1] Because of the confidential nature of the proceedings, *see, R.* 5:12–4(b), the true identity of the parties has not been revealed.

[2] This opinion supersedes the opinion delivered from the bench on December 12, 1996.

*Vincent P. Valerio*, Deputy Attorney General, for plaintiff DYFS.

*Theodore Sliwinski,* for defendants.

FISHER, J.S.C.

# I

## INTRODUCTION

Eight year old Jose M. found himself at the center of protracted litigation culminating in a lengthy trial. At the end of that trial, this court found that Jose had neither been neglected nor abused by defendants—his mother and stepfather—as had been claimed by the Division of Youth & Family Services ("DYFS").[3]

16 witnesses testified over 10 days. The court found in favor of defendants and dismissed the complaint. Now, defendants seek, among other things, an award of counsel fees from DYFS. They rely on this court's harsh words in dismissing the action[4] in support of their argument that DYFS's "abuse and neglect" complaint was frivolous within the meaning of *N.J.S.A.* 2A:15–59.1 ("the frivolous litigation statute").

■ Originally, the moving and opposing papers presupposed DYFS's vulnerability to attack by way of the frivolous litigation statute. That was logical since an earlier decision had, in fact, said so. *See Matter of K.L.F.,* 275 *N.J.Super.* 507, 646 *A.*2d 532 (Ch.Div.1993). Prior to the return date of this motion, however, the parties were invited to brief the question of whether *K.L.F.* should be followed.

For the reasons expressed below, this court disagrees with *K.L.F.* and holds that DYFS may not be sanctioned by way of *N.J.S.A.* 2A:15–59.1. Accordingly, the question of whether

---

[3] The action was based on *N.J.S.A.* 9:6–8.21 and 30:4C–12.

[4] The court then stated, for example, that "if anyone was abused and neglected it was [Jose's mother]."

DYFS's complaint was actually frivolous, or commenced or continued in bad faith, need not be reached.

## II

### ANALYSIS

#### A. The Problem

Picture the following scene. DYFS receives a referral from a school that one of their students has claimed to having been physically punished by his parents. A DYFS case worker is dispatched to the child's home that night. She is greeted by angry parents and tempers flare. The case worker seeks some indication that the child will not be disciplined inappropriately in the future but the parents stubbornly refuse to discuss the matter. None of the case worker's comments calm the waters or defuse the volatile situation. She calls her supervisor who contacts the local police in order to help restore civility in the home. Nothing works and while the case worker never intended to remove the child from the home, she now feels that the present situation warrants drastic action, particularly since some of the parents' anger seems directed toward the child. DYFS immediately removes the child from the home and a complaint is filed with the Family Part the next day. Whether the child was ever actually abused or neglected prior to removal remains a mystery as the litigation begins.

DYFS has been given the power to intervene into a scene such as described above, *see N.J.S.A.* 9:6–8.29(a), in order to "assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected." *See N.J.S.A.* 9:6–8.8. The issue now raised by defendants requires the court to consider whether the Legislature, in empowering DYFS to act swiftly and decisively to protect a potentially endangered child, also requires DYFS to act with deliberation and circumspection—to "stop,

think, investigate and research" [5]—as required of private litigants in less exigent circumstances.

In entertaining the conjectures that spring from this case, the court must consider the Legislature's expressions and intentions against the backdrop of the extraordinarily important goal of the protection of children from abuse and neglect.

### B. *Did the Legislature Intend to Include DYFS as a Party Against Whom Frivolous Litigation Sanctions Could be Awarded?*

In determining how a particular statute should be applied, the ultimate function of a court is to implement the intent of the Legislature. *State v. Sutton*, 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993). That intent is to be found on the textual face of the statute in question when it is unambiguous. *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). Under those circumstances the court's "sole function" is to enforce the statute "according to its terms." *Sheeran v. Nationwide Mutual Insurance Company*, 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979). On the other hand, when the statute is ambiguous, or its application to a particular problem is unclear, the Legislature's intent must be found by applying the rules of construction traditionally applied by the courts.

### 1. *The Legislature's Words*

The Legislature's desire to exempt DYFS from sanctions and to leave unfettered DYFS's pursuit of the protection of children can be found on the faces of *N.J.S.A.* 2A:15–59.1 and *N.J.S.A.* 2A:15–60. *N.J.S.A.* 2A:15–59.1 permits an award of fees in favor of a prevailing party if the court finds that a pleading of the "non-prevailing person" was frivolous. *N.J.S.A.* 2A:15–60 provides that

---

[5] This phrase comes from the federal courts which have interpreted *Federal Rule of Civil Procedure* 11. *See, e.g., Gaiardo v. Ethyl Corp.*, 835 *F.*2d 479 (3d Cir.1987). That approach is equally applicable here; the Appellate Division has found "the vast body of federal precedent" enlightening in examining *N.J.S.A.* 2A:15–59.1 and *R.* 1:4–8. *Iannone v. McHale*, 245 *N.J.Super.* 17, 26, 583 *A.*2d 770 (App.Div.1990).

"[i]n an action brought by the state ... the defendant ... shall not recover any costs against [the state]."

A close examination of the wording of these statutes compels a finding that the Legislature chose not to include the state, or any of its subdivisions, as a target of frivolous litigation sanctions. While the version of the frivolous litigation statute in existence at the time *K.L.F.* was decided strongly suggests this result, the amendments that were enacted after *K.L.F.* dispel any such doubts. The older and newer versions of the statute will be viewed separately.

(a) *"Something Old": the Pre–1994 Version of the Frivolous Litigation Statute*

*N.J.S.A* 2A:15–60 expressly bars an award of costs against the state "or any person for the use of the state." The court in *K.L.F.* acknowledged that this statute ostensibly prohibits an award of counsel fees against DYFS but avoided the effect of that conclusion when it mistakenly ruled that *N.J.S.A.* 2A:15–60 was in conflict with (and modified by) *N.J.S.A.* 2A:15–59.1.

Notwithstanding *N.J.S.A.* 2A:15–60, the phrasing used by the Legislature in the frivolous litigation statute reflects a conscious decision to bar its application to the state or its subdivisions. This can be seen when *N.J.S.A.* 2A:15–59.1 is momentarily shorn of most of its otherwise relevant verbiage, so that the statute reads that fees may be awarded to

A *party* who prevails ... against any other *party* ... [who is a] non-prevailing *person.* (emphasis added)

It is agreed, as urged by *K.L.F.*, that the word "party" is generally understood to have a broad meaning. *See, e.g., Kasharian v. Wilentz*, 93 *N.J.Super.* 479, 482, 226 *A.*2d 437 (App.Div.1967) (a party is "the person or entity beneficially interested or personally sought to be held liable"); *In re Garey's Estate*, 65 *N.J.Super.* 585, 588, 168 *A.*2d 273 (Cty.Ct.1961) (a party is " 'ordinarily one who has or claims an interest in the subject of an action or proceeding instituted to afford some relief to the one who sets the law in motion against another person or persons' ") (quoting

*Hughes v. Jones,* 116 *N.Y.* 67, 22 *N.E.* 446, 448 (1889)); *Black's Law Dictionary* 1122 (6th ed. 1990) (parties are persons "by or against whom a legal suit is brought, whether in law or in equity"). However, the Legislature further narrowed the class of parties against whom sanctions may be awarded by ultimately referring to them as "non-prevailing person[s]."

██ In its decision, the *K.L.F.* court erred in overlooking the significance of the Legislature's use of the word "person." Should a court simply ignore or choose not to give meaning to such phrasing? Earlier decisions provide the direction needed. They instruct that the meaning of a word or set of words may be indicated, controlled or clarified by neighboring words. *State v. Mortimer,* 135 *N.J.* 517, 536, 641 *A.*2d 257 (1994), *cert. denied* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994); *Falcone v. Branker,* 135 *N.J.Super.* 137, 147, 342 *A.*2d 875 (Law Div.1975). That is, a word is known by the company that it keeps, *Howard v. Harwood's Restaurant Co.,* 25 *N.J.* 72, 90, 135 *A.*2d 161 (1957); *Ben Ali v. Towe,* 30 *N.J.Super.* 19, 23, 103 *A.*2d 158 (App.Div.1954) and, thus, associated words in a statute can be viewed as explaining or limiting each other. *Germann v. Matriss,* 55 *N.J.* 193, 220–221, 260 *A.*2d 825 (1970); *State v. B.H.,* 290 *N.J.Super.* 588, 598, 676 *A.*2d 565 (App.Div.1996).[6] Here, after first referring to the litigant against whom fees are sought as the "other party," the Legislature then qualified its description of that litigant by referring to it as the "nonprevailing *person.*" The Legislature's switch from "party" to "person" should not be overlooked or viewed as insignificant. The courts are required to give, if possible, full effect to every word of a statute; a construction that renders part of a statute inoperative, superfluous or meaningless is to be avoided. *Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555, 258 *A.*2d 6 (1969). This change in descriptive terms by the Legislature carries special significance in this case. *N.J.S.A.* 1:1–2 defines "person" as including "corporations, companies, associa-

---

[6] The traditional phrase is "noscitur a sociis," meaning "it is known from its associates."

tions, societies, firms, partnership and joint stock companies as well as individuals"; but it also states that the word "person", when used in a statute, *does not include* the State of New Jersey unless the word "person" is used "to designate the owner of property."

Legislative intent can, at times, be elusive; capturing it requires resort to the clues left by the Legislature. The most telling of these are the very words used and the way these words have been defined in the past. In this case, the Legislature used a word of great scope ("party") but modified it with an admittedly broad, yet lesser inclusive term ("person"). The former might very well be assumed to include the state and its subdivisions, but the latter does not. *N.J.S.A.* 1:1-2. Without a clearer statement from the Legislature, the face of *N.J.S.A.* 2A:15-59.1 expressly excludes DYFS as a target of frivolous litigation sanctions because, in light of *N.J.S.A.* 1:1-2, DYFS cannot be found to be a nonprevailing "person".

### (b) *"Something New": the 1994 Amendments*

The amendments to *N.J.S.A.* 2A:15-59.1, which came about after *K.L.F.* was decided, resolve any lingering doubts. In 1995 the Legislature added subsection (a)(2) [7], which permits a "public entity" to recover frivolous litigation fees if it has provided a defense for a present or former employee and has prevailed in the case. That certainly was an odd step by the Legislature if, as *K.L.F.* holds, the terms used in the pre-existing statute were intended to include the state and its agencies.[8]

---

[7] Subsection (a)(2) states:

> When a public entity is required or authorized by law to provide for the defense of a present or former employee, the public entity may be awarded all reasonable litigation costs and reasonable attorney fees if the individual for whom the defense was provided is the prevailing party in a civil action, and if there is a judicial determination at any time during the proceedings or upon judgment that a complaint, counterclaim, crossclaim, or defense of the nonprevailing party was frivolous.

[8] Subsection (c) was amended to include the phrase italicized below:

The 1995 amendment to subsection (c) lays any doubt to rest. It formerly contained the phrase "a party seeking an award"; that phrase now reads "a party or public entity seeking an award." Again, if the word "party" is, as *K.L.F.* suggests, broad enough to include the state or its subdivisions, why did the Legislature feel a need to include the phrase "or public entity" in expanding the class of litigants who could seek an award? The answer is obvious: the Legislature's use of the word "party" was never intended to include the state or its subdivisions. A contrary conclusion would mean that the 1995 amendments had no substantive consequence. In seeking to ascertain the meaning of a statute, a court should not assume that a legislature would engage in such a useless act. *See Paper Mill Playhouse v. Millburn Township,* 95 *N.J.* 503, 521, 472 *A.*2d 517 (1984); *Cutler v. Borough of Westwood,* 295 *N.J.Super.* 344, 350, 685 *A.*2d 44 (App.Div.1996).

Moreover, while providing greater clarity in its description of those who may seek such an award the Legislature made no change in prescribing those who may be pursued by this vehicle. That is, as presently phrased, the statute permits a "party or public entity" to obtain an award against the "other party" (who has filed a frivolous pleading). Accepting, as a reasonable reader must, that the addition of "or public entity" is to have a substantive meaning, then the class of litigants who may pursue such a claim has been enlarged and, by the same token, the targeted class has remained the same. If this conclusion is not accepted, then one must be resolved to assume that the word "party" changes its meaning, chameleon-like, from one moment to the next; this court cannot leap to such an absurd conclusion.

There now can be no doubt that, while a public entity may seek frivolous litigation sanctions, such a claim may not be maintained

A party *or public entity* seeking an award under this section shall make application to the court which heard the matter.

against it. There may have been ambiguity in the pre–1995 version of the frivolous litigation statute, but not now.

### 2. *The Deciphering of Statutory Ambiguities*

*K.L.F.* was mistakenly decided for another compelling reason. *K.L.F.* interpreted the pre–1995 version of *N.J.S.A.* 2A:15–59.1 so as to cause it to conflict with *N.J.S.A.* 2A:15–60. Having created this conflict, *K.L.F.* then concluded that the Legislature must have "implied[ly] modifie[d]" *N.J.S.A.* 2A:15–60 when it adopted the frivolous litigation statute. 275 *N.J.Super.* at 522, 646 *A.2d* 532. This conclusion was embraced by *K.L.F.* because *N.J.S.A.* 2A:15–60 "has remained essentially unchanged since its original enactment ninety years ago" and that its age "brings into serious question its relevance nearly a century after its enactment." 275 *N.J.Super.* at 521, 646 *A.2d* 532.

The vitality of a law is not to be judged by age alone. Our federal constitution is over two centuries old. Can it be said to have lost its vitality over the years? King John executed the Magna Carta on June 15, 1215, at Runnymede. Yet, in England, they still say "Magna Carta is the law", although perhaps now with some exaggeration.[9] Obviously, far greater evidence must be found before a court can conclude that an older statute has been impliedly modified or repealed.

### (a) *The Cautious Approach to Finding an Implied Repeal or Modification*

 Our courts have traditionally assumed that when the Legislature enacts a statute it does not intend to repeal an older statute unless no way can be found for the two statutes to co-exist. *Hinfey v. Matawan Regional Bd. of Ed.*, 77 *N.J.* 514, 527–528, 391 *A.2d* 899 (1978); *Grzankowski v. Heymann*, 128 *N.J.Super.* 563, 568, 321 *A.2d* 262 (App.Div.1974). Repugnancy or statutory incompatibility must be "inescapable," *Hinfey, supra,* 77 *N.J.* at

---

[9] The full expression is "Magna Carta est lex. Deinde caveat rex," meaning: Magna Carta is the law and let the king look out.

527–528, 391 *A.*2d 899, and cannot be found where both statutes may reasonably stand together "each in its own particular sphere," *Swede v. Clifton*, 22 *N.J.* 303, 317, 125 *A.*2d 865 (1956); *State v. County of Hudson*, 161 *N.J.Super.* 29, 51, 390 *A.*2d 720 (Ch.Div. 1978), *aff'd* 171 *N.J.Super.* 453, 409 *A.*2d 1164 (App.Div.1979). The courts are required to construe together all existing statutes on the same subject matter as "a unitary and harmonious whole, in order that each may be fully effective". *Clifton v. Passaic County Bd. of Taxation*, 28 *N.J.* 411, 421, 147 *A.*2d 1 (1958); *Kugler v. Banner Pontiac–Buick, Opel, Inc.*, 120 *N.J.Super.* 572, 577, 295 *A.*2d 385 (Ch.Div.1972). This is particularly true when the statutes in question address a similar problem—here, the shifting of the expenses of a lawsuit. As Justice Francis observed in *Jacobs v. N.J. State Highway Authority*, 54 *N.J.* 393, 401, 255 *A.*2d 266 (1969), "when cognate laws are passed, a presumption of at least equal force is present that they were intended to become part of a consistent whole unless they or parts of them are expressly or impliedly incompatible."

Here, a choice is to be made between a broad interpretation of the class of litigants made potentially liable and a more narrow interpretation that would exclude the state and its subdivisions. The former choice requires a holding that *N.J.S.A.* 2A:15–60 has been repealed without any other corroborative evidence. The latter choice allows both statutes to remain harmonious. By reaching to find DYFS included in the targets described in *N.J.S.A.* 2A:15–59.1, *K.L.F.* proposed an analysis hostile to the continued existence of *N.J.S.A.* 2A:15–60 and contrary to the assumptions, mentioned above, which our courts are expected to follow.

(b) *The Construction of Statutes Claimed to be in Derogation of Sovereign Immunity*

Equally fatal to *K.L.F.* 's interpretation of these statutes is its unfounded assumption that the Legislature must have included

the state and its subdivisions in the category of those who may be liable by way of *N.J.S.A.* 2A:15-59.1 without expressly stating that intent. While *K.L.F.* might be correct that the writings of St. Thomas Aquinas provide assistance in a broad sense, *see K.L.F., supra,* 275 *N.J.Super.* at 517, 646 *A.*2d 532, a secular court of law must follow the path of civil law in construing a statute. The essential problem with *K.L.F.* is its holding that "the Legislature's failure to exclude expressly the state is a reflection of the legislative design that the state ought not be excepted from" the frivolous litigation statute. *Id.* at 518, 646 *A.*2d 532. That assumption is fundamentally erroneous.

The time-honored manner in which courts have construed statutes thought to be in derogation of sovereign immunity is just the opposite of *K.L.F.*'s holding. "Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances." Singer, *Sutherland Statutory Construction,* Vol. III, § 62.01 at 205 (5th ed., 1992). *Accord, New Jersey Interstate Bridge & Tunnel Commission v. Jersey City,* 93 *N.J.Eq.* 550, 553, 118 *A.* 264 (Chan.1922); *Union Bldg. & Const. Corp. v. Borough of Totowa,* 98 *N.J.Super.* 446, 449, 237 *A.*2d 637 (Law Div.1968) (Mountain, J.). This theory of construction emanated from the ancient concept that the king, as sovereign, is personally entitled to immunity. Later, in the United States, this concept was applied to the various national and state authorities, not because of some superior position inherited by the sovereign, but because "the people are regarded as the beneficiaries of the immunity that accrues to their agencies of government, rather than to those agencies, or the officials who function in them, in their own right." *Sutherland, supra,* at 205. For that reason, sovereign immunity retains a salutary, albeit different, nature in the United States. It

is now "premised on a policy of preserving for the public the efficient, unimpaired functioning of government." *Id.* at 205–206.

This approach, of course, is entirely consistent with modern thought on sovereign immunity in this State. Following the landmark decision in *Willis v. Dept. of Cons. & Ec. Dev.,* 55 *N.J.* 534, 264 *A.*2d 34 (1970) (which abolished sovereign immunity in the anticipation of what became the Tort Claims Act (*N.J.S.A.* 59:1–1 to 12–3)) immunity exists unless expressly waived by the Legislature. *N.J.S.A.* 59:1–2; *Pico v. State,* 116 *N.J.* 55, 59, 560 *A.*2d 1193 (1989). To view, then, a statute of general intent as including the state or its subdivisions—in the absence of an expressed declaration to that effect—is inconsistent with the traditional hostility toward inferring a statute to be in derogation of sovereign immunity.

*K.L.F.* offered very little to support its contrary theory. The example provided by *K.L.F.*—the Environmental Rights Act (*N.J.S.A.* 2A:35A–1 to 35A–14)—supports the position maintained in this opinion, not *K.L.F.*'s. *N.J.S.A.* 2A:35A–10 expressly permits, and at the same time places a ceiling over, an award of counsel fees in a successful action against "a local agency or the Department of Environmental Protection." *K.L.F.* claims that this statute, because it limits the state's exposure to sanctions, supports the view that in the absence of an affirmative and explicit limitation it must be presumed that the Legislature "did not in any manner intend to limit the State's exposure to potential fee sanctions." 275 *N.J.Super.* at 519, 646 *A.*2d 532. However, as *N.J.S.A.* 2A:35A–10 expressly reveals, the Legislature undertook to both create liability and then limit it. Can it be said, as *K.L.F.* suggests, that if the Legislature did neither, and remained silent as to the impact on public entities in the Environmental Rights Act, that public entities would be liable without limitation? The existence of *N.J.S.A.* 2A:35A–10 does not support *K.L.F.*'s view. Its existence demonstrates the Legislature's power to render the state or its subdivisions liable and its ability to do it in an

unambiguous manner, when that is the Legislature's intent.[10]

This view is consistent with the federal experience and congressional attempts to curb frivolous litigation. *Federal Rule of Civil Procedure* 11 was the device created to serve that goal and, like *N.J.S.A.* 2A:15–59.1, did so in general language. It was not, however, until the adoption of 28 *U.S.C.* § 2412(b) that Congress waived the immunity of the government and its attorneys and placed them on the same footing as private parties when litigating in the federal courts. *See Adamson v. Bowen,* 855 *F.*2d 668, 671–673 (10th Cir.1988). Until our Legislature similarly acts, the state and its subdivisions, including DYFS, shall continue to be immune from frivolous litigation sanctions.

## C. *Summary*

As indicated at the outset, the unwarranted interpretation of *N.J.S.A.* 2A:15–59.1 suggested by *K.L.F.* ultimately misserves the legislative intent that DYFS should have an essentially unfettered ability to protect children. This profoundly important goal should not be hampered by some hesitation potentially felt by a DYFS case worker that his or her role in protecting a child might not later be viewed as frivolous and give rise to monetary sanctions.[11]

---

[10] By giving its own specific definition of "person" in the Environmental Rights Act, the Legislature thereby avoided the effect of *N.J.S.A.* 1:1–2. *N.J.S.A.* 1:1–2 only applies when a definition of a word in another enactment is not "otherwise expressly provided."

[11] The narrow view of *N.J.S.A.* 2A:15–59.1 expounded in this opinion is also consistent with the Supreme Court's own strict interpretation of it. In *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 561, 626 *A.*2d 425 (1993), the Court held that the word "frivolous" as used in the statute should be given a restrictive interpretation in light of the premise that in a democratic society citizens should have ready access to the courts. In *Lewis v. Lewis,* 132 *N.J.* 541, 545, 626 *A.*2d 422 (1993) the Court determined that the frivolous litigation statute does not apply to motions because the statute only refers to other types of pleadings, *i.e.,* "complaint, counterclaim, cross-claim or defense." The frivolous litigation statute is further limited by *McKeown–Brand's* conclusion that the Legislature could not constitutionally create a standard applicable to the practice of law or engage in the disciplining of attorneys.

In addition, there is no evidence that the state generally, or DYFS specifically, has ever engaged in the type of conduct which the Legislature sought to deter by enacting *N.J.S.A.* 2A:15–59.1. There is no reason to believe that DYFS has engaged in a history of commencing litigation in bad faith. A legislature does not operate in a vacuum. The enactment of a law is always a response to a particular societal concern, whether real or perceived. Nothing in the history of the development of *N.J.S.A.* 2A:15–59.1 remotely suggests that there were any abuses committed by the government or its subdivisions which caused its development. In short, nothing other than some ambiguous or, perhaps, careless wording in *N.J.S.A.* 2A:15–59.1 can be found to support the argument that the Legislature intended to render DYFS liable for frivolous litigation sanctions. *K.L.F.* supports that position and, for that reason, this court declines to follow it.

The incident described in Section II A, *supra,* is similar to that which caused this litigation. Without some clearer expression from the Legislature, our courts should not assume a legislative intent in *N.J.S.A.* 2A:15–59.1 which might cause a DYFS representative to hesitate and perhaps fail to protect a child in ambiguous circumstances. The protection of all children is a goal of a most profound nature and constitutes one of the highest and noblest functions engaged in by governments. The Legislature has placed DYFS in the front lines to vindicate these goals. Recognizing that a loss of a single child is truly irreparable, it is simply unimaginable that the Legislature would create a deterrence or chill DYFS's unfettered pursuit of the protection of children in the fashion suggested by *K.L.F.* In light of the abundant evidence supporting this view, and without a clear and unambiguous statement from the Legislature to the contrary, the court will not reach to infer that DYFS may be liable for frivolous litigation sanctions.

## III

### *CONCLUSION*

For the reasons expressed above, *N.J.S.A.* 2A:15–59.1 does not apply against DYFS nor did it repeal or modify *N.J.S.A.* 2A:15–60; DYFS is immune from the claim for counsel fees lodged against it. Accordingly, this court need not reach the question of whether DYFS's commencement or pursuit of its complaint in this case was frivolous or motivated by bad faith.

A separate action was commenced by the Monmouth County Division of Social Services ("MCDSS") against Jose's mother under Docket No. FD–13–0339–95A and an order was entered on October 13, 1994, which imposed upon her a child support obligation while Jose was placed outside the home. Defendants have also sought relief from that order. That motion has been denied without prejudice. Any available relief should be sought by motion commenced in Docket No. FD–13–0339–95A and on notice to MCDSS, not by motion in this civil action.

And lastly, defendants' request for an injunction that would prohibit DYFS from pursuing any further referrals involving their family is denied. There is no authority for such extraordinary relief under the present circumstances, nor should there be.