NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2765-21

BOROUGH OF
ENGLEWOOD CLIFFS,

    Plaintiff-Appellant,

v.

THOMAS J. TRAUTNER, ALBERT
WUNSCH, 800 SYLVAN AVENUE,
LLC, and CHIESA SHAHINIAN &
GIANTOMASI, PC,

    Defendants-Respondents,

and

JEFFREY R. SURENIAN, JOSPEH
MARINIELLO, JR., JEFFREY R.
SURENIAN AND ASSOCIATES,
LLC, and MARINIELLO &
MARINIELLO, PC,

    Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **April 22, 2024**
>
> **APPELLATE DIVISION**

Submitted November 8, 2023 – Decided April 22, 2024

Before Judges Sumners, Rose and Smith.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-5785-21.

King, Moench & Collins, LLP, attorneys for appellant (Jerry J. Dasti and Patrick F. Varga, on the briefs).

Lowenstein Sandler, LLP, attorneys for respondents Thomas J. Trautner and Chiesa Shahinian & Giantomasi PC (A. Matthew Boxer, Peter Matthew Slocum, and Stephanie Ashley, on the brief).

Beattie Padovano, LLC, and Hill Wallack LLP, attorneys for respondent 800 Sylvan Avenue, LLC (Antimo Anthony Del Vecchio and Thomas Francis Carroll, of counsel and on the brief; Daniel L. Steinhagen and Keith Arnold Loughlin, on the brief).

Albert H. Wunsch, III, respondent pro se, joins in the brief of respondents Thomas J. Trautner, and Chiesa Shahinian & Giantomasi PC.

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

This appeal requires us to settle whether a public entity is immune from sanctions for filing a frivolous lawsuit in accordance with the Frivolous Litigation Statute (FLS), N.J.S.A. 2A:15-59.1, and Rule 1:4-8. The only published cases regarding this issue are two divergent Chancery Division rulings issued in 1993 and 1997. If immunity does not apply, we must then determine whether the trial court abused its discretion by imposing sanctions.

The Borough of Englewood Cliffs retained Thomas J. Trautner and Chiesa Shahinian & Giantomasi PC, (collectively CSG), Albert Wunsch III, Jeffrey

Surenian and Jeffrey Surenian and Associates, LLC, (collectively Surenian) to represent it in affordable housing litigation. After judgment was entered for developer 800 Sylvan Avenue, LLC. (Sylvan), a settlement was reached between the Borough and Sylvan. Thereafter, political control of the Borough Council majority changed hands and the newly constituted Council sued CSG, Wunsch, and Surenian, alleging professional malpractice, breach of contract, unjust enrichment, civil conspiracy, and aiding and abetting arising from their representation of the Borough in the litigation. The Borough also sued Sylvan, alleging claims of conspiracy and aiding and abetting.

The trial court granted defendants' Rule 4:6-2(e) motions to dismiss the Borough's complaint with prejudice. The trial court subsequently granted defendants' motion for sanctions, ordering the Borough to pay their attorney's fees and costs for filing a frivolous lawsuit. The Borough appeals, arguing the sanction applications were procedurally deficient; as a public entity, it is immune from paying sanctions under the FLS; and the trial court abused its discretion in finding the Borough's lawsuit was frivolous.[1]

---

[1] On August 25, 2023, the Borough and Surenian filed a stipulation of dismissal dismissing all claims and counterclaims against each other.

The court rejects the Borough's arguments and affirms based on our interpretation of the FLS that the Borough is not immune from sanctions, defendants' applications for sanctions were procedurally compliant with <u>Rule</u> 1:4-8, and the trial court did not abuse its discretion in imposing sanctions against the Borough.

## I.

The genesis of this litigation is a declaratory judgment action[2] by the Borough seeking a trial court order that it complied with its state constitutional affordable housing obligations. After Sylvan intervened in the action, the Borough hired CSG, Surenian, and Wunsch (collectively "defendant attorneys").[3] We need not fully detail that action or other related litigation because they are unnecessary to resolve this appeal.[4] Suffice it to say, the trial court—the same court which entered the order under review—entered judgment

---

[2] <u>In the Matter of the Application Englewood Cliffs</u>, No. BER-L-6119-15.

[3] The Borough also retained and sued Joseph Mariniello, Jr. and Mariniello & Mariniello PC, but they are not included because they did not seek fees or costs, were dismissed as defendants, and are not parties to this appeal.

[4] <u>800 Sylvan Ave. LLC v. Planning Bd. of Englewood Cliffs</u>, No. A-2309-19 (App. Div. Aug 16, 2023); <u>800 Sylvan Ave., LLC v. Borough of Englewood Cliffs</u>, No. A-4019-17 (App. Div. Feb. 19, 2020); <u>Borough of Englewood Cliffs v. Surenian</u>, No. BER-L-787-21 (Law Div. May 21, 2021).

A-2765-21

in favor of Sylvan by awarding it a builder's remedy.[5]  This led to a settlement agreement between Sylvan and the Borough resolving the number of affordable housing units that Sylvan could build in the Borough and related issues. Relevant to this appeal, the agreement provided that if "either party . . . seeks any relief related to the [declaratory judgment action] in any court of the State of New Jersey . . . , the non-breaching party may move to enforce this provision of the [a]greement and the breaching party shall be liable for all legal fees incurred."

Prior to approving the settlement, the Borough Council passed Resolution 20-132, praising defendant attorneys who represented it in the declaratory judgment action for recommending a settlement prior to trial, and censuring the mayor, who was a member of an opposing political party, for "thwart[ing] the work of the Borough to resolve the affordable housing litigation matter . . . through the filing of needless lawsuits and allegations."

---

[5]  "A builder's remedy provides a developer with the means to bring 'about ordinance compliance through litigation.'"  In the Matter of the Application of Bordentown, 471 N.J. Super. 196, 221 (App. Div. 2022) (quoting Mount Olive Complex v. Township of Mount Olive (Mount Olive II), 356 N.J. Super. 500, 505 (App. Div. 2003)).

In the subsequent municipal election, political control of the Borough Council majority changed hands. About nine months later, the Borough sued defendant attorneys alleging legal malpractice. In its first amended complaint, as to defendant attorneys, the Borough alleged professional malpractice, breach of contract, unjust enrichment, civil conspiracy, and aiding and abetting. As to defendant Sylvan, the Borough alleged only conspiracy and aiding and abetting. Within six weeks of being served the complaint, each defendant sent the Borough's attorneys notices demanding the lawsuit be voluntarily dismissed because it was frivolous. The Borough did not comply.

Defendants successfully moved under Rule 4:6-2(e) to dismiss the Borough's complaint with prejudice. In its written decision, the trial court found the: (1) malpractice claims were without basis in law or fact; (2) lawsuit was barred by the entire controversy doctrine; (3) public documents controlled and evinced the Borough's satisfaction with the defendant attorneys' representation; (4) conspiracy and aiding and abetting claims were without basis in law or fact; and (5) Borough's attorney "was without an authorized resolution to commence and prosecute this litigation and was unable to secure [authorization] retroactively." The Borough did not appeal.

6

Defendants next timely moved for attorney's fees due to the Borough's failure to withdraw the lawsuit as they demanded. See R. 1:4-8(b)(2) (motions for reimbursement of attorney's fees are to be filed within twenty days of the final judgment). In a written decision, the court awarded fees to defendant attorneys pursuant to Rule 1:4-8, but Wunsch was only entitled to costs because he was self-represented. After defendants submitted their certificates of legal services and costs, the court's orders awarded: Sylvan $75,634.75; Wunsch $327.20; and CSG $113,264.50.[6]

Before us, the Borough contends: (1) defendants failed to satisfy the procedures in Rule 1:4-8 and N.J.S.A. 2A:15-59.1 to collect attorney's fees; (2) it is immune from frivolous litigation sanctions as a municipality; and (3) the trial court abused its discretion in finding the Borough engaged in frivolous litigation.[7] Before addressing the first and third contentions, we first determine whether the Borough is immune from sanctions.

---

[6] The court also awarded attorney's fees of $27,258 to Surenian, which as noted is no longer a party to this appeal.

[7] The Borough also contends the trial court erred in finding its attorneys, Stone & Magnanini LLP (SM), in the action lacked authorization to sue defendants. However, given the court's decision not to impose sanctions against SM—who is not participating in this appeal—and SM's authorization was not relevant to

A-2765-21

II.

The FLS "serves a punitive purpose, seeking to deter frivolous litigation," and "a compensatory purpose, seeking to reimburse 'the party that has been victimized by the party bringing the frivolous litigation.'" Toll Bros., Inc. v. Township of West Windsor, 190 N.J. 61, 67 (2007) (quoting Deutch & Shur, P.C. v. Roth, 284 N.J. Super. 133, 141 (Law Div. 1995)). The statute provides:

a.
> (1) A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> (2) When a public entity is required or authorized by law to provide for the defense of a present or former employee, the public entity may be awarded all reasonable litigation costs and reasonable attorney fees if the individual for whom the defense was provided is the prevailing party in a civil action, and if there is a judicial determination at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim, or defense of the nonprevailing party was frivolous.

---

the granting of sanctions against the Borough, the trial court's ruling that SM was not authorized to sue defendants is not an issue we need address.

b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:

(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

c. A party or public entity seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit stating in detail:

(1) The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and

9

(2) How much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future.

[N.J.S.A. 2A:15-59.1 (emphasis added).]

A trial court's decision to order frivolous lawsuit sanctions is reviewed under an abuse of discretion standard. Wolosky v. Fredon Township, 472 N.J. Super. 315, 327 (App. Div. 2022) (citing McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "Reversal is warranted when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment.'" Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div. 2009) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

A. Public Entity Immunity

Whether a State and its agencies and political subdivisions are immune from the FLS is unsettled law. The only published cases are two divergent

Chancery Division rulings issued almost four years apart, the most recent being some twenty-seven years ago.  The Chancery court held In the Matter of K.L.F., 275 N.J. Super. 507, 511 (Ch. Div. 1993), that N.J.S.A. 2A:15-59.1 applies to governmental bodies.  Almost four years later, another Chancery court reached a contrary result in Div. of Youth & Fam. Servs. v. P.M., 301 N.J. Super. 80, 82 (Ch. Div. 1997).  The Borough cites P.M. to support its immunity contention. We examine these two decisions.

   i. In the Matter of K.L.F.

In K.L.F., the court examined the policy behind the FLS because it determined, in applying our statutory construction rules, the statute's plain meaning as suggested in the Legislature's clear directive "that a party may seek sanctions against 'any other [non-prevailing] party'" does not resolve if sanctions are limited to a private party and not a public entity.  275 N.J. Super. at 513, 515 (alteration in original).  The court determined the statute is "punitive in nature and seeks the elimination of baseless litigation and pleadings, without express exceptions," and considered the adage "expressio unius est exclusio alterius," meaning "the express mention of one thing necessarily implies the exclusion of all others."  Id. at 517.  (citation omitted).

To avoid "the sua sponte creation of an exception which would certainly not advance the legislative purpose," the court reasoned "[t]he Legislature's failure to carve out an exception [to public entities] within N.J.S.A. 2A:15-59.1" demonstrated an intent not "to immunize the State from . . . sanction[s]." Id. at 519. Combining the statute's policy and "[its] technical construction," the court maintained "it [was] patently evident that the Legislature did not intend to exempt the State, as party to a civil action, from the same standards of 'good faith' and 'reasonable basis in law' as would be expected of a private party in the same action." Id. at 520.

The K.L.F. court's analysis did not end there. It next considered the impact of N.J.S.A. 2A:15-60, which is "seemingly incompatible with N.J.S.A. 2A:15-59.1." Ibid. N.J.S.A. 2A:15-60 provides, in pertinent part:

> In an action brought by the state, or the governor, or any person for the use of the state, the plaintiff shall recover costs as any other plaintiff; but the defendant in such an action shall not recover any costs against such plaintiff, whether the action is dismissed, judgment shall pass in favor of the defendant or any other proceeding is taken.

The court recognized the "well-established rule that where two statutes appear to be in conflict, and one is general in nature and the other more specific, the conflict is resolved in favor of the more specific statute 'as a more precise

manifestation of legislative intent.'" Id. at 521 (quoting State v. Gerald, 113 N.J. 40, 83 (1988)). It determined N.J.S.A. 2A:15-60 "has been circumvented when the basis for assessing counsel fees against the State has been identified narrowly and with particularity" and is "a general provision which has remained essentially unchanged since its original enactment ninety years ago," thus "bring[ing] into serious question its relevance nearly a century after its enactment." Id. at 521. Considering "the relative ages of the statutes,[8] and the strength and force of the legislative mandate enunciated in N.J.S.A. 2A:15-59.1, as adduced by the foregoing discussion of legislative intent," the court reasoned "N.J.S.A. 2A:15-59.1 supersedes N.J.S.A. 2A:15-60 and operates as an implied modifier of the latter and is, therefore, controlling." Id. at 522. Hence, the court held "that the State and its agencies and political subdivisions do indeed fall within the purview and operation of the [FLS]." Id. at 530.

ii. Division of Youth & Family Services v. P.M.

---

8  N.J.S.A. 2A:15-60 was enacted in 1903. L. 1903, c. 247. N.J.S.A. 2A:15-59.1 was enacted in 1988. L. 1988, c. 46.

In P.M., a different Chancery court disagreed with K.L.F., holding that a state agency was immune from FLS sanctions.[9] 301 N.J. Super. at 82. In reaching this holding, the court discerned a distinction between a "party" and "person" in N.J.S.A. 2A:15-59.1(a)(1). Id. at 84-87. The court determined the statute provided that a "party who prevails . . . against any other party . . . [who is a] non-prevailing person" may be awarded fees. Id. at 85 (alteration in original) (quoting N.J.S.A. 2A:15-59.1). The court held the distinction between the two terms is significant, noting that under N.J.S.A. 1:1-2, whose definitions apply to the FLS, a "person" includes "corporations, companies, associations, societies, firms, partnership and joint stock companies as well as individuals," but "does not include the State of New Jersey unless the word 'person' is used 'to designate the owner of property.'" Id. at 86-87.

The P.M. court also relied upon the 1995 amendment to the statute, which was enacted after K.L.F., and added subsection (a)(2) to N.J.S.A. 2A:15-59.1. Id. at 87. Subsection (a)(2) allows a public entity to obtain attorney's fees when the law required it to defend a prevailing present or former employee when the

---

[9] Given its finding that the state agency was immune, the P.M. court did not reach the issue of whether the "complaint was actually frivolous, or commenced or continued in bad faith." 301 N.J. Super. at 82-83.

nonprevailing party pursued a frivolous complaint, counterclaim, cross-claim, or defense. N.J.S.A. 2A:15-59.1(a)(2). The court reasoned the Legislature would not have added this provision if "the terms used in the pre-existing statute were intended to include the state and its agencies." P.M., 301 N.J. Super. at 87.

The court further maintained that "[t]he 1995 amendment to subsection (c) lays any doubt to rest." Id. at 88. Subsection (c) previously provided "a party seeking an award," but was changed to provide "a party or public entity seeking an award." Ibid. The court reasoned "if the word 'party' is, as K.L.F. suggests, broad enough to include the state or its subdivisions, why did the Legislature feel a need to include the phrase 'or public entity' in expanding the class of litigants who could seek an award?" Ibid. According to the P.M. court, "The answer is obvious: the Legislature's use of the word 'party' was never intended to include the [S]tate or its subdivisions. A contrary conclusion would mean that the 1995 amendments had no substantive consequence." Ibid.

Lastly, the P.M. court found that because the FLS does not clearly extinguish our State's "modern thought" that sovereign "immunity exists unless expressly waived by the Legislature," id. at 92 (citing N.J.S.A. 59:1-2), it does not upset the presumption that public entities are immune from the statute's

sanctions, ibid.  The court relied on a provision in the Environmental Rights Act, N.J.S.A. 2A:35A-1 to 35A-14, which permits a counsel fee award in certain prescribed circumstances, subject to a limit set forth in N.J.S.A. 2A:35A-10, as an example of an express legislative undertaking to create liability within that limit.  Id. at 92-93.  Thus, the Legislature's intent to allow liability against the State must be done "in an unambiguous manner."  Id. at 92-93 (challenging the K.L.F. court's view that "an affirmative and explicit" provision is required to limit the State's liability).

### iii.    Lack of Immunity

K.L.F. and P.M. both express sound reasoning in reaching their respective rulings, making our decision a close call.  We, however, conclude as did K.L.F. and the trial court, that a public entity is not immune from the sanctions that can be imposed under the FLS.

The plain language in N.J.S.A. 2A:15-59.1(a)(1) leads us to conclude that the unqualified term, "party," in the phrase, "[a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees," does not exclude a public entity "party."  See Lippman v. Ethicon, Inc., 222 N.J. 362, 380-81 (2015) (emphasizing "the statute's plain language, . . . is generally the best

indicator of the Legislature's intent" (quoting <u>Donelson v. DuPont Chambers Works</u>, 206 N.J. 243, 256 (2011))). Nonetheless, we appreciate the <u>P.M.</u> court's analysis highlighting how N.J.S.A. 2A:15-59.1(a)(1)'s subsequent use of "person" leads to ambiguity because a public entity is not a "person" under N.J.S.A. 1:1-2 unless it is being "used to designate the owner of property which may be the subject of an offense." Yet, the distinction between these terms for interpretative purposes is less significant because other portions of the FLS, specifically N.J.S.A. 2A:15-59.1(a)(2) and (b), expressly allow recovery of fees against a "nonprevailing party" whose litigation conduct was frivolous.

If we conclude, and we do not, that the plain language of the FLS is ambiguous as to the definition of "party," then we must look to extrinsic evidence to inform our analysis, "including legislative history." <u>Parsons by Parsons v. Mullica Twp. Bd. of Educ.</u>, 226 N.J. 297, 308 (2016) (quoting <u>State v. Marquez</u>, 202 N.J. 485, 500 (2010)). The Legislature's objective in enacting the FLS was "punitive in nature," <u>K.L.F.</u>, 275 N.J. Super. at 516 (quoting <u>Somerset Trust Co. v. Sternberg</u>, 238 N.J. Super. 279, 286 (1989)), to deter the filing of frivolous claims by allowing a judge to impose attorney's fees sanctions against the non-prevailing party, <u>ibid.</u> (citing <u>Chernin v. Mardan Corp.</u>, 244 N.J. Super. 379, 382 (Ch. Div. 1990)). There is no indication in the

statute's legislative history that public entities were meant to be exempt from sanctions if they filed claims determined to be frivolous. See S. Cmty. Affs. Comm. Statement to S. Comm. Substitute for A. 1012, S. 1399 & S. 1290 (Oct. 13, 1994). Absent that clear indication, a public entity should be subject to the FLS to satisfy the legislative goal of curbing frivolous litigation. If the Legislature intended to afford immunity to public entities, it would have clearly stated so.

After the K.L.F. court held public entities were not immune to FLS sanctions, the Legislature did not amend the statute to clarify whether public entities were immune.[10] Rather, post-K.L.F., N.J.S.A. 2A:15-59.1 was amended in 1995 to add: subsection (a)(2)—allowing a public entity to obtain attorney's fees when defending a present or former employee; and subsection (c)— providing a public entity could seek an attorney's fees award like other parties in a civil case. L. 1995, c. 13, § 1. Neither amendment declared a public entity was immune from sanctions under the statute. Thus, unlike P.M., we view the amendments as interrelated: making it clear that since a public entity was now allowed to seek sanctions when paying for the defense of a

---

[10] We also recognize that after P.M. was issued, the Legislature took no action to clarify whether public entities were not immune.

present or former employee when it was <u>not</u> a party, it was subject to the same procedures as a party to the litigation when seeking sanctions. We thus conclude the FLS allows for sanctions against public entities.

III.

Having concluded the Borough is not immune to FLS sanctions, we address its contention that defendants did not comply with the procedural requirements of <u>Rule</u> 1:4-8 and N.J.S.A. 2A:15-59.1. The Borough argues that only CSG "properly addressed relief" under both <u>Rule</u> 1:4-8 and N.J.S.A. 2A:15-59.1. Yet, the Borough claims, neither defendants nor the trial court addressed whether attorney's fees should be imposed against the Borough, as a party, "to the extent practicable," as prescribed by <u>Rule</u> 1:4-8. The Borough further asserts defendants' motions for sanctions failed to comply with N.J.S.A. 2A:15-59.1, which requires certifying: (1) the amount of fees requested; (2) itemized disbursements; (3) "any other factors relevant in evaluating fees and costs"; and (4) "[h]ow much has been paid to the attorney and what provision[s], if any, ha[ve] been made for the payment of these fees in the future." (quoting N.J.S.A. 2A:15-59.1(c)(1) to(2)). Because CSG did not certify who paid their litigation fees in defending the Borough's malpractice claims and the court did not inquire who did pay such fees, the Borough asserts it was likely paid by

19

malpractice insurance companies and such disclosure should have been made. Hence, defendants' motions for fees and sanctions should have been denied with prejudice. We are unpersuaded.

Our Supreme Court through its rulemaking authority imposed procedural requirements in Rule 1:4-8, which are not in the FLS. Toll Bros., 190 N.J. at 65. The FLS and Rule 1:4-8 are interpreted restrictively because "the right of access to the court should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of the litigants bearing, in the main, their own litigation costs, should not be abandoned." Wolosky, 472 N.J. Super. at 327 (quoting Gooch v. Choice Entertaining Corp., 355 N.J. Super. 14, 18 (App. Div. 2002)).

Sanctions can be imposed against an attorney or pro se party who files a frivolous pleading with an "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," R. 1:4-8(a)(1), or by asserting a claim or defense that lacks the legal or evidential support required by Rule 1:4-8(a)(2), (3) and (4). When sanctions are sought against a party, Rule 1:4-8(f) provides that "'[t]o the extent practicable,' the procedures governing applications for frivolous litigation sanctions against attorneys and pro se parties shall apply also to applications against parties." Toll Bros., 190

N.J. at 64 (alteration in original). To issue sanctions, the court must first "assess[] . . . the practicability of compliance" with the Rule. Id. at 73.

Before moving for FLS sanctions, a prevailing party "is required to comply with Rule 1:4-8(b)(1)'s safe harbor provision." Id. at 69. A written notice must specifically state why the pleading is frivolous and demand it be withdrawn within twenty-eight days, and if not, sanctions will be sought. R. 1:4-8(b)(1). These "timeframes [are] for bringing frivolous behavior to the attention of the offending party, . . . so that the behavior could be corrected promptly and litigation costs kept to a minimum, thereby preserving judicial, lawyers', and litigants' resources." Toll Bros., 190 N.J. at 71. A subsequent motion for sanctions must "describe the specific conduct alleged to have violated" Rule 1:4-8 and "include[] a certification that the applicant served written notice and demand pursuant to Rule 1:5-2 to the attorney or pro se party who signed or filed the paper objected to." R. 1:4-8(b)(1).

To sanction the Borough by ordering it to pay defendants' attorney's fees, the trial court must "assess whether it is practicable under all the circumstances to require strict adherence to the requirements of Rule 1:4-8." Toll Bros., 190 N.J. at 72. "The most fact-sensitive aspect of such an inquiry undoubtedly will involve compliance with the safe harbor requirement that is designed to bring

21

an early stop to offending behavior." Ibid. "By insisting on compliance as soon as practicable, the salutary benefits of adhering to the notice requirement will more promptly rid the judicial forum of frivolous litigation behavior and will concomitantly provide reimbursement for the fees and costs actually attributable to an adversary's uncorrected offending conduct." Ibid.

A. Adherence to Rule 1:4-8

i. Safe Harbor Compliance

We agree with the trial court that defendants complied with the "safe harbor" provision by notifying the Borough within weeks of being served the first amended complaint that the litigation should be withdrawn because the claims are frivolous. Thus, contrary to the Borough's argument, the court assessed under Rule 1:4-8(f) whether "[t]o the extent practicable, the procedures prescribed by this rule shall apply to the assertion of costs and fees against a party other than a pro se party pursuant to N.J.S.A. 2A:15-59.1."

Sylvan's notice contended: (1) the Borough's claims are frivolous and sanctions will be sought under Rule 1:4-8 and N.J.S.A. 2A:15-59.1 if not withdrawn; (2) as an adverse party in the Borough's declaratory judgment action, there was no legal support for the Borough's effort to disgorge it from the builder's remedy and related relief it received from the alleged malpractice

by defendant attorneys; (3) there is no evidence that it engaged in conspiracy or aided and abetted tortious activity against the Borough; (4) there is no good faith argument to expand the law to support the Borough's claims; (5) the Borough's complaint interfered with its protected rights under the First Amendment of the United States Constitution and Article I of the New Jersey Constitution to seek judicial relief against the Borough; (6) the tort claims are barred by the Noerr-Pennington[11] doctrine; and (7) the Borough's complaint constitutes a SLAPP[12] claim.

Wunsch's notice asserted: (1) Borough counsel was not authorized to file the complaint; (2) the retainer agreement for Borough counsel to represent the Borough was not properly executed as it was signed by the mayor, not the Borough's Deputy Clerk as required, and only listed New York attorneys

---

[11] Noerr-Pennington stems from E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 136-40 (1961), and United Mine Workers v. Pennington, 381 U.S. 657, 669-70 (1965). "Under the . . . doctrine, those who engage in conduct aimed at influencing the government, including litigation, are shielded from retaliation provided their conduct is not a sham." Cordova v. Cline, 396 P.3d 159, 167 (N.M. 2017) (citing Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 555-57 (2014)).

[12] An acronym for Strategic Lawsuits Against Public Participation, whereby litigation is filed for the main purpose of stifling free speech rights by imposing "the expense and burden of defending a lawsuit." LoBiondo v. Schwartz, 323 N.J. Super. 391, 418 (App. Div. 1999).

A-2765-21

Nicholas Gravante and Karen Dyer of Cadwalader, Wickersham & Taft LLP as the Borough's attorney, but their pro hac vice applications were denied ceasing their involvement in the litigation; and (3) the settlement agreement the complaint seeks to overturn was authorized by the Borough Council and cannot be invalidated.

CSG's notice stated: (1) the complaint "violate[d] the frivolous litigation standards of . . . Rule1:4-8 and N.J.S.A. 2A:15-59.1"; (2) the complaint was ultra vires given the Borough Council did not approve its initiation by the mayor before the Borough retained counsel; (3) the attorney's fees incurred by the Borough's counsel far exceeded the $100,000 cap set forth in counsel's retainer agreement as authorized by the Borough Council;[13] and (4) the malpractice claims are without basis in fact or law.

The record supports the trial court's findings that defendants' notices "pass[ed] muster" under Rule 1:4-8 by "specif[ying] the basis for the belief that the [Borough's] pleading is frivolous and providing [an] opportunity for remediation." Although Sylvan's notice, unlike the other defendants', did not specifically mention the complaint must be withdrawn within twenty-eight days

---

[13]  According to CSG's notice, the most recent invoice showed the Borough's counsel had billed $723,416.33 in fees.

per Rule 1:4-8(b)(1), in repeatedly referencing Rule 1:4-8, it sufficiently notified the Borough that an application for sanctions would be made under the Rule. Moreover, Sylvan is entitled to attorney's fees independent of N.J.S.A. 2A:15-59.1 and Rule 1:4-8 based upon its settlement agreement with the Borough that if the municipality unsuccessfully seeks judicial relief related to the declaratory judgment action it is liable for Sylvan's attorney's fees. Lastly, the Borough did not provide any evidence demonstrating it could not withdraw its complaint in response to defendants' demands.

ii. Certification of Services

Defendants did not provide certifications of services with their motions for sanctions, N.J.S.A. 2A:15-59.1(c), but filed them in accordance with the court's order after it granted their motions. We reject the Borough's argument that this process warrants reversal of the attorney's fees awards.

The trial court did not abuse its discretion in requesting the certifications after ordering sanctions. The Borough, which did not challenge defendants' certifications of service, cites no authority for its assertion that the procedure was contrary to the law. The court complied with the FLS by initially deciding whether the Borough engaged in frivolous litigation under N.J.S.A. 2A:15-59.1(b) and then considering the amount of reasonable fees that should be

25

awarded based on defendants' certifications, which included the information listed in N.J.S.A. 2A:15-59.1(c).  The court limited attorney's fees for services rendered after the twenty-eight-day safe harbor period.

As for the Borough's assertion that defendant attorneys' malpractice insurance coverage must be considered in calculating attorney's fees, it cites no authority or reasonable basis for its position.  Neither N.J.S.A. 2A:15-59.1 nor Rule 1:4-8 require any disclosure by prevailing parties concerning the payment of attorney's fees by a malpractice insurance carrier.

IV.

Finally, we address the Borough's contention that the trial court abused its discretion in finding the Borough engaged in frivolous litigation.  The FLS contemplates two bases for a trial court to find frivolous litigation.  The "nonprevailing party" must have advanced its claim in "bad faith, solely for the purpose of harassment, delay or malicious injury," or "[t]he nonprevailing party knew, or should have known," its claim had no "reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law."  N.J.S.A. 2A:15-59.1(b).

"For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support,

26

or it is not supported by any credible evidence, or it is completely untenable.'" United Hearts, L.L.C. v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007)). "The nature of litigation conduct warranting sanction under [Rule 1:4-8] has been strictly construed." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:4-8 (2024). An attorney's fees sanction pursuant to Rule 1:4-8 "is not warranted where the plaintiff has a reasonable good faith belief in the merit of [their] action." J.W. v. L.R., 325 N.J. Super. 543, 548 (App. Div. 1999).

Accordingly, sanctions will not be imposed against an attorney who mistakenly files a claim in good faith. Horowitz v. Weishoff, 346 N.J. Super. 165, 166-67 (App. Div. 2001). Sanctions should be awarded only in exceptional cases. Fagas v. Scott, 251 N.J. Super. 169, 181 (Law Div. 1991).

The party seeking sanctions must "prov[e] that the non-prevailing party acted in bad faith." Ferolito, 408 N.J. Super. at 408 (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). A prevailing party's allegation that the non-prevailing party's claim lacked "a reasonable basis in law or equity," when the non-prevailing party is represented by an attorney, cannot sustain an award without proof the non-prevailing party

"'act[ed] in bad faith in asserting' or pursuing the claim." Ibid. (quoting

McKeown-Brand, 132 N.J. at 549). Thus, a non-prevailing party whose

"conduct bespeaks an honest attempt to press a perceived, though ill-founded

and perhaps misguided, claim, [absent] . . . bad faith," cannot be ordered to pay

sanctions. Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999)

(citing McKeown-Brand, 132 N.J. at 563).

Applying these principles, we discern no abuse of discretion in the trial

court's finding that the Borough's litigation was frivolous, as it was supported

by credible evidence in the record and consistent with the law. In its written

decision, the court found:

> The [Borough's] bad faith was demonstrated by the
> fact that it knew or should have known, when it filed
> suit against its former attorney[s] and the developer
> which had successfully sought and obtained a builders
> remedy seeking $10,000,000 in damages, that its
> claims were contrary to the clear evidence of its
> satisfaction with the representation of its counsel and
> that in refusing to settle the underlying litigation and
> thereby disregarding their attorneys' advice the
> Borough lacked proximate cause for its alleged injuries
> due to the alleged malpractice and alleged civil
> conspiracies. As to the alleged civil conspiracies and
> aiding and abetting there was no foundation for such
> claims and the court concludes the sole purpose of the
> litigation was to harass, delay and cause malicious
> injury to . . . Sylvan particularly, as well as . . . attorney
> defendants.

28

Support for the court's findings of frivolous litigation was grounded in its decision dismissing the Borough's complaint for failure to state a claim. The court determined:

> [T]he record is replete with evidence that the Borough resolved to pursue a trial in the affordable housing litigation despite the attempts of their attorneys to dissuade them.
>
> . . . .
>
> . . . [T]he Borough's undisputed refusal to settle and in so doing disregarding [defendant] attorneys' advice, the Borough cannot establish proximate cause for their alleged injury. Without proximate cause the action must fail.
>
> . . . .
>
> . . . The Borough has acknowledged that . . . defendant attorneys handled the litigation with knowledge, skill and diligence, and that their advice was reasonable. That is all that is required of counsel.
>
> . . . .
>
> . . . [H]aving failed to allege facts showing . . . defendant[] [attorneys], or any of them committed an underlying wrong, there is no basis upon which the Borough can sustain a civil conspiracy claim. Further, there is no basis upon which the Borough may sustain a claim for aiding and abetting liability as the pleadings fail to allege facts which demonstrate . . . defendant[] [attorneys] performed a wrongful act which caused injury, that . . . defendant[] [attorneys] were generally aware of their role in the part of an

29

overall illegal or tortious activity at the time of their representation, or that . . . defendant[] [attorneys] knowingly and substantially assisted the principal violation.

It is apparent that when political control of the Borough Council changed hands after the election, the newly constituted Council took issue with the prior Council's action in resolving the affordable housing controversy. But in suing defendants, the Borough's former attorneys and the developer, the Borough proffered no facts and articulated no law to substantiate its allegations. There was no honest, creative advocacy in the Borough's claims. See Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 85 (App. Div. 1993).

We find no support for the Brough's argument that a "fact[-]sensitive review" indicates that "it is clear that [its] intent, purpose and actions . . . could not possibly be deemed frivolous." The Borough relies upon an unproduced email between its attorney and the new Council after the first amended complaint was filed, stating an affidavit of merit will be provided by another attorney that "based upon . . . review of [the] amended complaint, documents, briefing and other materials, it appears . . . [d]efendant attorneys deviated from a standard of care and committed malpractice." Because the email was neither part of the trial court record nor supported by counsel's certification from counsel as required by Rule 1:6-6, it cannot be considered. Moreover, because

the email was sent three months after the amended complaint was filed, it was not a basis for the Borough's decision to sue defendant attorneys.

We recognize that a trial court should only award sanctions for frivolous litigation in exceptional cases. Iannone v. McHale, 245 N.J. Super. 17, 28 (App. Div. 1990). This is one such case.

To the extent we have not addressed any of the Borough's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31